**Robert C. HAHN, Plaintiff-Appellant,**

v.

**Francis W. SARGENT et al., Defendants-Appellees.**

**No. 75–1087.**

United States Court of Appeals, First Circuit.

Argued June 3, 1975.

Decided Sept. 18, 1975.

---

Robert C. Hahn, with whom Hahn & Matkov, Boston, Mass., was on brief, for plaintiff-appellant.

Alex Prasinos, pro se.

Richard R. Eurich, with whom Morrison, Mahoney & Miller, Boston, Mass., was on brief, for Alan G. Miller, defendant-appellee.

Michael Eby, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Hiller B. Zobel, Thomas G. Dignan, Jr., and Paul B. Galvani, Sp. Asst. Attys. Gen., were on brief, for Francis W. Sargent, Robert H. Quinn, John J. Irwin, Jr., Harvey F. Rowe, Jr., John G. Ryan, and William I. Cowin, defendants-appellees.

Alfred J. Disciullo, Jr., Boston, Mass., on brief for Wendell Berman, defendant-appellee.

Before COFFIN, Chief Judge, McENTEE, Circuit Judge, and MURRAY *, District Judge.

* Sitting by designation.

COFFIN, Chief Judge.

Appellant, a former chairman of the Massachusetts Republican party, filed this action under four sections of the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985(2), 1985(3) and 1986, alleging that appellees' participation in events which led to his indictment, defeat in his efforts to be reelected as state party chairman, and acquittal by a jury, constituted a conspiracy to violate his constitutional rights. Appellees are two private attorneys, a businessman, and the former Governor, Attorney General, two Assistant Attorneys General, Secretary of Consumer Affairs, and Insurance Commissioner of the state of Massachusetts. They are alleged variously to have perjured themselves, suborned perjury, suppressed evidence and manipulated administrative processes in an effort to destroy appellant's political career by generating adverse publicity and procuring his indictment. The district court dismissed three counts of the complaint and granted summary judgment as to the fourth. *Hahn v. Sargent,* 388 F.Supp. 445 (D.Mass.1975). We affirm.

■ The district court granted summary judgment with respect to appellant's claim under 42 U.S.C. § 1983. Federal Rule of Civil Procedure 56(c) provides:

" . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . .."

judgment "shall be rendered forthwith". In determining whether summary judgment is appropriate the court must "look at the record . . . in the light most favorable to . . . the party opposing the motion . . .." *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). Similarly the court must indulge all inferences favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82

S.Ct. 993, 8 L.Ed.2d 176 (1962); *Rogen v. Ilikon,* 361 F.2d 260, 266 (1st Cir. 1966). These rules must be applied with recognition of the fact that it is the function of summary judgment, in the time hallowed phrase, "to pierce formal allegations of facts in the pleadings . . ..", *Schreffler v. Bowles,* 153 F.2d 1, 3 (10th Cir. 1946), and to determine whether further exploration of the facts is necessary. *Briggs v. Kerrigan,* 431 F.2d 967, 968 (1st Cir. 1970).

■ The language of Rule 56(c) sets forth a bifurcated standard which the party opposing summary judgment must meet to defeat the motion. He must establish the existence of an issue of fact which is both "genuine" and "material". A material issue is one which affects the outcome of the litigation. To be considered "genuine" for Rule 56 purposes a material issue must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Service Co., Inc.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). The evidence manifesting the dispute must be "substantial", *Fireman's Mut. Ins. Co. v. Aponaug Mfg. Co., Inc.,* 149 F.2d 359, 362 (5th Cir. 1945), going beyond the allegations of the complaint. *Beal v. Lindsay,* 468 F.2d 287, 291 (2d Cir. 1972).

With these standards and objectives in mind, we examine the record which the district court held did not present any genuine issue of material fact as to appellant's § 1983 claims. The story, as reflected in the transcripts of grand jury testimony by some of the appellees, portions of the transcript of appellant's trial, the transcript of an administrative hearing, several documents and the affidavits submitted by appellees, is as follows. The Rockland Mutual Insurance Company, controlled by appellee Berman, applied to the Commissioner of Insurance, appellee Ryan, for authority to write bodily-injury automobile liability

insurance. Ryan denied the application, and Rockland, represented by appellee Miller obtained a state court order requiring Ryan to hold hearings on Rockland's application. Sometime shortly before February 17, 1972, after Ryan had held the hearing and had tentatively decided to grant the application subject to certain conditions, but before he had begun to write his decision, he was contacted by a member of the staff of appellee Sargent, then Governor of Massachusetts, who told Ryan to expect a call from appellant on "an insurance matter". On February 17, 1972, appellant met with Ryan for "five or ten minutes", expressing his hope that Rockland's application would be treated fairly. Ryan reported the substance of this conversation to his superior, the Secretary of Consumer Affairs, appellee Cowin, who instructed Ryan to bring appellant to see him. Appellant, Ryan and Cowin met in Cowin's office on February 25, 1972. Appellant evinced concern that if Rockland's application was not soon approved the company would fail. Ryan and Cowin indicated that the decision, which was by then partially written, would be favorable although subject to conditions. Three days later, in response to a phone call from appellant, Ryan read him the list of conditions which would be imposed on Rockland by the yet-to-be-released decision. On March 2, 1972, after several more calls, Ryan sent appellant a copy of the decision which was on the same day released.

On March 3, 1972, Rockland's attorney of record, appellee Miller, went to Ryan's office, discussed the conditions imposed on Rockland by the decision, and then recounted the story told him by Berman of an unsolicited offer of political assistance and subsequent claim of successful intervention by appellant and another attorney named Kirk. Ryan immediately arranged to take Miller to tell his story to Cowin that afternoon. On March 16, 1972, Berman accompanied by Miller met with Cowin and one of his assistants. Berman said that he had initially been contacted by Kirk, a personal friend of a Rockland staff attorney, appellee Prasinos. Kirk had extended several offers of help to Berman through Prasinos, and finally arranged for Berman to meet with him and appellant the morning of February 28, 1972. At that meeting, Berman told Cowin, appellant and Kirk indicated that they could assure Rockland of favorable action on its application by Ryan. Berman did not, he said, authorize such intervention; nevertheless Kirk called soon after to advise Berman that appellant had been successful in his efforts on behalf of Rockland. A few days later, Berman stated, Kirk had called suggesting that an appropriate fee for the services rendered by him and appellant would be $75,000, and that Berman should in addition purchase several tables at a fund raising dinner. Later, according to Berman, the fee demands were reduced, and then, when Kirk heard that Berman had been summoned to Cowin's office, withdrawn.[1]

Cowin asked Berman to make a written statement rehearsing the story which he had just told. Berman, after several days deliberation, refused to make such a statement. Cowin then asked Ryan to reopen the hearing on Rockland's application to permit him to put into the record, without revealing the names of Kirk and appellant, a summary of the events surrounding appellant's involvement with the application. A hearing was held on March 31, 1972, at which

---

1. This portion of the tale—the contacts between Berman and appellant and those between Berman and Kirk—we draw from the testimony and affidavits of Miller, Ryan and Cowin. Berman, testifying before the grand jury which subsequently indicted both appellant and Kirk, related a slightly different story, indicating that the request for a $75,000 fee had been made the afternoon of February 28, 1972, when Kirk called Berman to report appellant's success on behalf of Rockland. This concededly reveals the existence of an issue of fact. Indeed, we are left uncertain as to what in truth transpired between Berman, Kirk and appellant, but the factual issue as to whether the fee request was made on February 28 or a few days later is not material. *See infra.*

Cowin testified and was cross-examined by Miller.

Beginning on March 3, when Miller first reported Berman's story of appellant's offer of assistance, Cowin had kept Governor Sargent's office apprised of significant developments. Contemporaneous with his testimony at the reopened Rockland hearing, Cowin referred the matter to the Attorney General, appellee Quinn, who after further investigation, instructed two of his assistants, appellees Rowe and Irwin, to bring the evidence before a grand jury. Appellant and Kirk were indicted and brought to trial. During the trial testimony of Berman the defense requested that the court examine the prosecution's records of prior statements given by Berman. The court, after examining the materials in camera, ordered the prosecution to make available to defense counsel several items not revealed in response to previous requests for exculpatory evidence. These materials were available to the defense when Berman was cross-examined. The jury acquitted both defendants. Kirk has since died.

Appellant, in his long narrative complaint, tells a different tale. Berman, he says, solicited his help through Kirk, and thereafter, delighted at the report that Rockland's license would be granted, offered to make Kirk an officer of Rockland as compensation, and to purchase $500 worth of tickets to a party fund raiser. The allegation that he volunteered to help and then demanded a huge fee, appellant states, was concocted by Berman at a meeting with Cowin on March 10, 1972, in an effort to secure elimination of the conditions imposed on Rockland by Ryan's decision. (Cowin's affidavit denies that such a meeting took place.) Cowin, Ryan and Sargent, according to appellant, availed themselves of Berman's allegations which they knew to be false, to engineer the destruction of appellant, a political rival, and to disguise their own misdeeds.

Appellant contends that Quinn, a Democrat, was content to go along with the scheme which promised to spill Republican blood. To this end, appellant says, Quinn, Rowe and Irwin both tolerated perjured testimony by several of the other appellees, and suppressed exculpatory evidence.

The complaint details not only events in which appellant was a participant, but those in which he admittedly was not. It purports to examine not only appellees' actions, but their thoughts as well.[2] Rule 56 provides a procedure for culling from a complaint allegations which cannot be proven. Each side is permitted to submit affidavits "made on personal knowledge" setting forth "such facts as would be admissible in evidence" and showing "affirmatively that the affiant is competent to testify to the matters stated therein." The Rule specifies that affidavits may be supplemented by the results of discovery conducted by the litigants, and then instructs that

> "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

■ Appellant responded to appellees' motions for summary judgment, affidavits and documentary evidence with four affidavits. These, rather than setting forth appellant's personal knowledge of "such facts as would be admissible in evidence," and showing appellant's competence to testify to the facts asserted,

---

2. For example, paragraph 26 of the complaint alleges in part:

"Defendant Cowin, apprehensive about defendant Berman's mental state and apprehensive that he might reveal defendant Cowin's attempt to use his office to gain control over Rockland, saw his false story as an opportunity not only to divert attention from his own improper conduct, but also an opportunity to eliminate plaintiff as a factor in the Republican Party of Massachusetts and a possible political rival . . . . ."

presented a compendious replica of the complaint, supplemented by assertions that certain issues could only be resolved by trial, and promises to "offer evidence at trial in support of the allegations . . . in his . . . complaint." Even assuming, arguendo, that the allegations of the complaint stated a cause of action under 42 U.S.C. § 1983,[3] few of those allegations survived as genuine issues of fact at the time the district court granted summary judgment. With respect to Ryan, Cowin, Miller, Sargent and Prasinos appellant offered no evidence sufficient to establish the existence of a genuine issue of fact. Promises that evidence would be forthcoming were not enough. Donnelly v. Guion, 467 F.2d 290, 293–94 (2d Cir. 1972); De-Bardeleben v. Cummings, 453 F.2d 320, 324 (5th Cir. 1972).

> "While we believe that the plaintiff is entitled to all favorable inferences, he is not entitled to build a case on the gossamer threads of whimsey, speculation and conjecture." Manganaro v. Delaval Separator Co., 309 F.2d 389, 393 (1st Cir. 1962).

Much of the complaint focuses upon events which occurred in private encounters in appellant's absence. The alleged participants having denied appellant's allegations, there can be little utility in permitting appellant to pursue his theories at trial. Dyer v. MacDougall, 201 F.2d 265, 268–69 (2d Cir. 1952).

■ The record does establish that Berman told the grand jury a story different from that which Miller, Ryan and Cowin state that he told them. Appellant contends that Quinn, Rowe and Irwin deliberately suppressed evidence of Berman's inconsistency, failing to reveal it to the grand jury, or upon pre-trial motions for exculpatory evidence. As we have noted, supra, at appellant's criminal trial, in response to a defense motion, the court ordered the prosecution to make available to the defense certain materials relating to prior statements by Berman. These facts, however, fail to present a material issue for trial.

The limits of prosecutorial immunity are not yet clear. Compare Imbler v. Pachtman, 500 F.2d 1301 (9th Cir. 1974), cert. granted, 420 U.S. 945, 95 S.Ct. 1324, 43 L.Ed.2d 423 (1975), with Hilliard v. Williams, 465 F.2d 1212 (6th Cir. 1972), and Hilliard v. Williams, 516 F.2d 1344 (6th Cir. 1975); see Guerro v. Mulhearn, 498 F.2d 1249, 1256 (1st Cir. 1974). Nevertheless, we are convinced that whatever standard of prosecutorial immunity the Supreme Court eventually adopts will require that bad faith or unreasonable action be shown. See Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Appellant has adduced no evidence of bad faith, knowing misconduct or unreasonable action on the part of Quinn, Rowe or Irwin, in their presentation of evidence to the grand jury. Cowin, Ryan, Berman and Prasinos all testified before the grand jury, exposing what inconsistencies there were between their stories. Appellant produced before the district court no specific items of exculpatory evidence which the prosecution failed to lay before the grand jury.[4]

The tardy and reluctant disclosure of exculpatory evidence establishes no triable issue, for, even accepting as true the allegations of the complaint, appellant suffered no prejudice as a consequence of the late disclosure. The material was made available in time to aid the defense in its cross-examination of Berman, and appellant was acquitted. See United States v. Principe, 499 F.2d 1135, 1138–39 (1st Cir. 1974); United States v. McGovern, 499 F.2d 1140, 1142–43 (1st Cir. 1974); Woodcock v. Amaral, 511 F.2d 985, 990–91 (1st Cir. 1974).

---

3. We express no view as to the correctness of the district court's conclusion that most of the allegations of the complaint stated no cause of action under § 1983. See Hahn v. Sargent, 388 F.Supp. 445, 450–54 (D. Mass. 1975).

4. Appellant pursued none of the avenues open to him through the Federal Rules of Civil Procedure to develop such evidence, neither taking depositions, nor serving interrogatories.

■ State of mind is difficult to prove and great circumspection is required where summary judgment is sought on an issue involving state of mind. *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486,, 7 L.Ed.2d 458 (1962). But that does not mean that a party against whom summary judgment is sought is entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim. *Washington Post Co. v. Keough,* 125 U.S.App.D.C. 32, 365 F.2d 965 (1966).

■ Since we find the district court was correct in granting summary judgment with respect to all of the other appellees, whatever disputes may have survived with respect to Berman's conduct and testimony were immaterial. Section 1983 does not provide a vehicle for the adjudication of claims against a single private individual. Nor can appellant's complaint under § 1983 that appellees conspired to deprive him of his constitutional rights survive the determination that no genuine and material fact persists with respect to the allegations against the appellees other than Berman. We therefore conclude that the district court was correct in granting summary judgment with respect to count I of the complaint.

■ We next address appellant's claim under 42 U.S.C. § 1985(3) that appellees conspired to deprive him of equal protection of the laws.[5] In *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held § 1985(3) applicable to a private conspiracy to interfere with the activities of a black civil rights worker. The Court explicitly avoided definition of the exact scope of the section, stating that "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." 403 U.S. at 102, 91 S.Ct. at 1798. A considerable diversity of views has developed among the Courts of Appeals with respect to the breadth of § 1985(3)'s applicability to both private conspiracies[6] and official

---

5. Section 1985(3) provides:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

6. *See, e. g., Richardson v. Miller,* 446 F.2d 1247 (3d Cir. 1971) (firing of employee due to his exercise of First Amendment rights held actionable); *Bellamy v. Mason's Stores, Inc. (Richmond),* 508 F.2d 504 (4th Cir. 1974) (firing of employee because of Ku Klux Klan membership held not actionable); *Westberry v. Gilman Paper Co.,* 507 F.2d 206 (5th Cir. 1974), *vacated pending rehearing en banc,* and then dismissed by stipulation of the parties, 507 F.2d at 215, 5 Cir. (conspiracy to murder environmental activist held actionable); *Marlowe v. Fisher Body,* 489 F.2d 1057 (6th Cir. 1973) (denial of promotion and overtime due to religion and national origin held actionable); *Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir. 1972) (refusal to rent office to lawyer because of race of clients held not actionable); *Action v. Gannon,* 450 F.2d 1227 (8th Cir. 1971) (en banc) (black activist organization's interference with services in predominantly white church held actionable).

conspiracies.[7] One limitation imposed by the Court's language in *Griffin* does, however, prevail whether the substance of the section is given a broad or narrow gloss. There must be a "class-based, invidiously discriminatory animus behind the conspirators' action." The Court emphasized that the "motivation aspect of § 1985(3) focuses not on scienter in relation to deprivation of rights but on invidiously discriminatory animus." 403 U.S. at 102, n. 10, 91 S.Ct. at 1798. We have recently interpreted this requirement to mean that "the complaint must allege facts showing that the defendants conspired against the plaintiffs because of their membership in a class and that the criteria defining the class were invidious." *Harrison v. Brooks,* 519 F.2d 1358 (1st Cir. 1975). *See Hughes v. Ranger Fuel Corp., Division of Pittston Co.,* 467 F.2d 6 (4th Cir. 1972); *Arnold v. Tiffany,* 487 F.2d 216 (9th Cir. 1973), *cert. denied,* 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974), *but see Richardson v. Miller,* 446 F.2d 1247 (3d Cir. 1971).

Appellant also contends that appellees injured him by conspiring to obstruct justice in violation of 42 U.S.C. § 1985(2) which provides

"[Second]. If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such part or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; of if two or more persons conspire for the purpose of impending, hindering, obstructing,

or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws; . . .."

There is a dearth of authority construing § 1985(2). We are inclined to read that portion of the section's language following the semicolon as paralleling § 1985(3), and subject, therefore, to the same doubts and limitations rooted in *Griffin* as § 1985(3). Both sections are directed toward "equal protection of the laws", the key phrase in the Court's analysis in *Griffin.* 403 U.S. at 102, 91 S.Ct. 1790. And there is nothing to suggest that the phrase was used in a different sense in § 1985(2) than it was in § 1985(3). *See Kelly v. Foreman,* 384 F.Supp. 1352 (S.D.Tex.1974); *Phillips v. Singletary,* 350 F.Supp. 297 (D.S.C.1972). Having established no "class-based, invidiously discriminatory animus", appellant can proceed no farther, under the second part of § 1985(2) than he could under § 1985(3).

The first part of § 1985(2), preceding the semicolon, is addressed to conspiracies to interfere with parties, jurors or witnesses in proceedings in federal courts. Appellant makes no allegation of injury stemming from a conspiracy to interfere with federal proceedings.

Finally, appellant claims a violation of 42 U.S.C. § 1986 which renders liable

"[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do . . .."

---

7. *See, e. g., Glasson v. City of Louisville,* 518 F.2d 899 (6th Cir. 1975) (police destruction of anti-Nixon posters held actionable); *Lesser v.* *Braniff Airways, Inc.,* 518 F.2d 538 (7th Cir. 1975) (wrongful arrest and removal from airline ticket counter held not actionable).

As the district court held, the dismissal of appellant's claim under § 1986 falls upon the rejection of his § 1985 claims.

*Affirmed.*