**MOSS–ROSENBERG VERFT, A/S and Avondale Shipyards, Inc., Plaintiffs,**

v.

**GENERAL DYNAMICS CORPORATION, Defendant.**

Civ. A. No. 76–3025–C.

United States District Court,
D. Massachusetts.

Nov. 30, 1977.

Thomas S. Grilk, Richard J. Innis, Hale & Dorr, Boston, Mass., James P. Thompson, Thomas R. H. Howarth, Haight, Gardner, Poor & Havens, New York City, for plaintiffs.

Allan J. Topol, Covington & Burling, Washington, D. C., Lewis H. Weinstein, Foley, Hoag & Eliot, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

CAFFREY, Chief Judge.

This complex litigation concerns the actual and potential appropriation of protected information, in connection with two separate patent licensing agreements for the construction of liquid natural gas (LNG) tankships with spherical pressure cargo tanks. Plaintiff Moss-Rosenberg Verft, A/S (Moss) is a business entity organized under the laws of the Kingdom of Norway, with its principal place of business located at Stavanger, Norway. Moss owns various patents related to its unique design (Moss design) of spherical pressure cargo tanks, which, when welded by a continuous, cylindrical skirt to the structure of a tankship, are used to hold and transport LNG. Plaintiff Avondale Shipyards, Inc., (Avondale) is a Louisiana shipbuilding corporation with its principal place of business located at Avondale, Louisiana. Avondale, subject only to the expected approval of its Board of Directors, plans to enter into a non-exclusive license agreement with Moss that would entitle Avondale to utilize the patented Moss design in the construction of LNG tankships having an alleged cargo capacity of greater than 130,000 cubic meters ($M^3$). Subject to a favorable outcome in the instant action, Avondale also intends to conclude contracts with Zapata Western LNG, Inc., and Ogden Marine Indonesia, Inc., for the sale of completed LNG tankships. Both plaintiffs sue under the Declaratory Judgment Act, 28 U.S.C.A. § 2201, for a declaration that their contemplated license agreement and construction will not cause them to become liable to the defendant, General Dynamics Corporation (General Dynamics), for the use of trade secrets and contractually-protected technical improvements. Plaintiffs also ask the Court to declare that the Moss design and all relevant information and "know-how" contained in Moss newsletters and in the reports of Det Norske Veritas (DNV), an engineering consultant firm, are the sole property of Moss.

General Dynamics is a Delaware corporation with its principal place of business in St. Louis, Missouri and a major shipbuilding facility in Quincy, Massachusetts. General Dynamics is the holder of a 1971 license from Moss which gives it for five and one-half years the exclusive right to build in the United States LNG tankships which use the Moss design and which possess a cargo capacity of 130,000 $M^3$ or less (exclusivity clause). Under that same license agreement, Moss reserved the concurrent rights to license others to build LNG tankships of greater than 130,000 $M^3$ cargo capacity, and to grant exclusive American licenses for LNG shipbuilding of greater than 150,000 $M^3$ cargo capacity. Moss and General Dynamics also have agreed to make known and available to each other all improvements in tankship construction within the field of information originally supplied by Moss. All other technical improvements, however, were to become the property of the party making the improvement (improvements clause).

In February, 1976, Moss advised General Dynamics that it intended to enter into a license agreement with Avondale, one of General Dynamics' major American competitors. Beginning with a series of telexes in March, 1976, General Dynamics has claimed a proprietary interest in the contribution of its know-how and engineering skill to the first successful adaptation of the Moss design to American shipbuilding practices. General Dynamics contends that its know-how has so "infused and permeated" the information exchanged between Moss and General Dynamics, that the former cannot license another American shipbuilder to use the Moss design without thereby sanc-

tioning the appropriation of General Dynamics' trade secrets and technical improvements protected by the existing license agreement.

In addition, General Dynamics asserts that any information exchanged with Moss must be treated as confidential by Moss unless expressly excluded as such under the license agreement. The Quincy shipbuilder argues that the exclusivity and improvements clauses must be read together to impose a contractual obligation on Moss to insure that no subsequent American licensee utilizes General Dynamics' alleged improvements. General Dynamics further claims that the Moss-Avondale license agreement is open-ended in its term, and lacks precautions to protect the confidential information of General Dynamics. For instance, it is alleged that the Moss employees most knowledgeable about General Dynamics' techniques of LNG shipbuilding are the same employees assigned to work with Avondale. General Dynamics has threatened to hold Moss "strictly accountable" for any loss resulting from Moss' release of General Dynamics' proprietary information. In its legal claims, General Dynamics asserts contractual rights against Moss arising out of the confidentiality clause of the existing license agreement, as well as rights against Avondale in tort law, based upon Restatement (First) of Torts §§ 757–59 (1939).

Plaintiffs, on the other hand, assert that General Dynamics is falsely claiming a proprietary interest in a design that belongs exclusively to Moss. Plaintiffs contend that the actual purpose of the General Dynamics' claim is anticompetitive—to abort the performance of the proposed Moss-Avondale licensing agreement and thus to terminate participation by any other American shipbuilder in the construction and sale of LNG tankships with the Moss design. They deny that Moss has received or disclosed the analysis, calculations, engineering work, and test data that comprise most of General Dynamics' alleged trade secrets. Specifically, Avondale claims: (1) that most of the technical improvements are in the public domain, and, therefore, are not pro-

tected; (2) that even if protected, the improvements arise out of the license agreement, and, therefore, are subject to arbitration in Copenhagen pursuant to the license agreement; (3) that even if the improvements are truly improvements, Moss does not have an affirmative obligation under the license agreement with General Dynamics to prevent other American licensees from using the alleged improvements; and (4) that even if such a contractual duty exists, it runs only against Moss and not against a third party such as Avondale. In sum, Avondale contends that the only unique aspect of its proposed LNG tankship construction is the Moss design of the cargo tanks, that General Dynamics has made no material contribution to the design through confidential information or otherwise, and that the rest of the technology, information, know-how, and data are already in the public domain as conventional ship design.

Additionally, General Dynamics sets forth two counterclaims. In the one now before the Court, General Dynamics seeks to enjoin the pending Moss-Avondale license agreement. It alleges that the preliminary Avondale engineering drawings attached to the amended complaint indicate that the proposed LNG tankships would have a cargo capacity of less than 130,000 $M^3$, and, therefore, would violate the exclusivity clause of the Moss-General Dynamics license agreement.

In an earlier proceeding, another Judge of this Court denied without prejudice Avondale's first motion for summary judgment. He rejected Avondale's assertion that General Dynamics had given it inadequate notice of the latter's claim that Avondale had appropriated protected property rights of General Dynamics. He also ordered General Dynamics to file documented specifications of all trade secrets that it wished to assert against plaintiffs, together with a statement relative to each trade secret identifying the extent to which the trade secret is known outside of General Dynamics' shipbuilding business, the extent of its public disclosure, and other factors discussed in the Restatement (First) of Torts § 757, Comments a, b (1939).

In response to that order, General Dynamics has identified three categories of allegedly protected items that have been provided to Moss and are subject to disclosure and utilization under the pending Moss-Avondale license agreement.

The matters now before the Court are: (1) Avondale's motion for summary judgment for declaratory relief, on the grounds that no material facts are disputed and that General Dynamics, as a matter of law, has failed to demonstrate that its trade secrets and technical improvements are entitled to any protection against Avondale; and (2) Avondale's motion for summary judgment dismissing General Dynamics' first counterclaim. General Dynamics seeks denial of both motions.

■■■ An examination of the voluminous accumulation of documents in the official file of this case has not persuaded me that plaintiff Avondale has established the non-existence of disputed issues of material fact. Genuine issues of material fact exist *at least* as to:

1. Are General Dynamics' alleged trade secrets truly trade secrets?

2. Are General Dynamics' alleged technical improvements truly technical improvements to the original, patented Moss design, and, if so, are they contractually protected as property rights under the existing licensing agreement?

3. Are any of the improvements in the public domain as Avondale alleged?

4. What items of protected information related to General Dynamics' alleged 26 trade secrets and 41 technical improvements were ever communicated to or otherwise received by Moss?

5. What protected items that were received by Moss have been disclosed by Moss to Avondale?

6. Whether Avondale has used or is using any of the alleged secrets and improvements in its preliminary drawings and specifications annexed to the amended complaint?

7. Has any valuable, confidential "know-how" communicated to Moss by General Dynamics so permeated and infused Moss' original design that they cannot be extracted, or otherwise protected from disclosure, in any subsequent license of the design by Moss to an American shipbuilder?

8. Did all of the contested data and information in Avondale's preliminary drawings originate from Moss' experience in constructing LNG tankships in its own shipyard, or did some of it originate from General Dynamics' experience at Quincy?

The presence of these issues of fact renders the entry of summary judgment inappropriate at this time. *See Poller v. Columbia Broadcasting System*, 368 U.S. 464, 472–73, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Gutor International AG v. Raymond Packer Co., Inc.*, 493 F.2d 938, 944 (1st Cir. 1974). Moreover, decisions of the Court of Appeals for the First Circuit have made it abundantly clear that the granting of a motion for summary judgment is to be withheld "where there is the slightest doubt as to the facts." *Peckham v. Ronrico Corp.*, 171 F.2d 653, 657 (1st Cir. 1948).

The documents of record establish that the scope of the controversy was defined, at least for the time being, by the list of claimed trade secrets and technical improvements which General Dynamics identified in response to an earlier order of the Court, and by the list of those protected items alleged to be presently incorporated in Avondale's preliminary drawings. This is not to say that the scope of the controversy may not become enlarged if and when Avondale goes beyond the preliminary stage of conceptual design and includes in later drawings protected items presently not incorporated in the preliminary drawings. The Court is not withholding summary judgment on the basis of this possibility but merely noting that this possibility lurks in the future.

■■■ It should also be briefly noted herein that the Court is not persuaded as to the non-existence of material facts arising out of the first counterclaim. There is a funda-

mental factual question as to the proper interpretation and method of calculation of the term "cargo capacity," as used in the licensing agreement. Also, there is a question of fact as to whether or not a notice of termination of General Dynamics' limited and conditional exclusivity has either been unequivocally or validly given by Moss.

Accordingly, because of the existence of the questions of material fact referred to above, Avondale's motions for summary judgment are denied.