Kevin CROSBY, Plaintiff,

v.

**SUNMARK INDUSTRIES, a Division of Sun Oil Company of Pennsylvania, Defendant.**

Civ. A. No. 80–2617–MC.

United States District Court, D. Massachusetts.

Dec. 29, 1981.

Alan H. King, Winthrop, Mass., for plaintiff.

J. Anthony Messina and Stephen J. Sundheim, Pepper, Hamilton & Scheetz, Philadelphia, Pa., Anthony M. Doniger, Sugarman, Rogers, Barshak & Cohen, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

McNAUGHT, District Judge.

This action came on to be heard on defendant Sunmark Industries' (Sunmark) motion for summary judgment under Rule 56(c) F.R.Civ.P. Relief is sought under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185.

A complaint was filed in the District Court of East Boston, and the action was then removed to this court. The plaintiff claims that military pay differential benefits, disability pay, and contractual reemployment rights have been withheld unfairly and arbitrarily in violation of his employ-

ment contract. He asserts that he has exhausted administrative alternatives prior to commencing this action.

We look to the pleadings, including the complaint, the deposition of the plaintiff (marked as Exhibit A), submitted with the defendant's motion for summary judgment, and particularly to the collective bargaining agreement (marked as Exhibit E) which provided the plaintiff with contractual remedies.

Mr. Crosby was first employed by the defendant corporation as a truck driver in August of 1977, at defendant's Revere terminal (Exhibit A, p. 5). On May 11, 1979 he was notified that he would be laid off effective May 19, 1979 (Exhibit A at p. 37). On May 16, 1979 he complained that by reason of an injury to his back he had to leave work. He did not come back to work on or before May 19, 1979 (Exhibit A, pp. 43, 44). He was paid through May 18, 1979.

We now back up to the month of April, 1979 when, it is agreed, Crosby sought information from Sunmark concerning military pay differential benefits. On April 24, 1979, Joseph A. Vasapollo, Customer Service Representative of the defendant, following a conversation with Crosby, outlined benefits which would be received by Crosby from Sunmark if he was inducted into the armed forces. Mr. Vasapollo wrote in part: "Details for this benefit can be found on pages B–16 and B–17 in your Blue Benefits Handbook". (Exhibit C). The plaintiff applied for enlistment in the United States Marine Corps on May 2, 1979 and was scheduled for induction on May 16, 1979. He was to leave for "boot camp" at 8:00 A.M. on May 17, 1979 (Exhibit J). To repeat, it was on May 11th that he was informed that he would be laid off May 19th, and it was on May 16th, the day before his scheduled departure for "boot camp" and three days before the proposed layoff, that he says he slipped in gasoline while pulling a filling hose at work (Exhibit A, p. 43). "I was loading two products. One of the elbows was leaking on the ground, and I am pulling the two loading arms like a son of a gun. As I am ready to hook up the pump, I slipped on the gas when I stretched in a weird way, and my back started bothering me." This was an aggravation of a prior back injury. He was hospitalized as a result of this episode (Exhibit A, p. 44). Subsequent to the injury the plaintiff was paid workmen's compensation benefits by Royal Globe Insurance. Plaintiff was inducted into the service on November 2, 1979.

The military leave benefits mentioned by Mr. Vasapollo in the letter of April 24, 1979 (Exhibit B) were described by Mr. Vasapollo in general terms. He wrote to Mr. Crosby that: "Details for this benefit can be found on pages B–16 and B–17 in your Blue Benefits Handbook". Those pages became Exhibit C to the defendant's motion. Sometime in late May or early June, according both to plaintiff's and defendant's memoranda, the plaintiff met with Frank Lailer, a representative of the Employees' Association, and with Ray Robitaille, the defendant's terminal manager in Revere, to discuss his eligibility for company-provided military leave benefits. He was told (Exhibit A, pp. 14 and 17) by Robitaille: "I can't tell you you can or you cannot get benefits. You are going to have to pursue that to Burton". (Mary Burton, Human Resources Manager). On August 15, 1979, the plaintiff and Mr. Lailer met with Ms. Burton who told plaintiff that he would be eligible if he was inducted into the service prior to the effective date of his layoff (May 19th). Mr. Lailer responded that because of the injuries sustained by Crosby while still employed by defendant as a permanent full-time employee, he could not be inducted. (Exhibit A, p. 18). The plaintiff attempted thereafter to contact Mary Burton by telephone, and on October 26, 1979 she told him that although he would receive workmen's compensation because the injury was job-related, he would not be qualified for military leave of absence benefits (Exhibit A, p. 20).

According to his deposition, between October 26 and November 2, 1979, the plaintiff met with a union representative named Kelly and Mr. Kelly wrote a letter to a Mr. Harry Smith, Benefits Coordinator of the

defendant in Philadelphia. He said that he received an answer "and they referred everything back to Framingham" (Exhibit A, p. 28). Next, he said that: "I remember Frank or Jack (Lailer or Kelly) said, 'Let's take the first step and do what the book says'". This he interpreted as following the advice by Sun to follow up on denied benefits. Counsel argued at the hearing on this motion that this was the procedure for appealing denials such as the oral denial by Mary Burton, and he referred to the Benefits Handbook (Exhibit F), page I–5. It is provided therein that when a claim for benefits under a Sun benefit plan is denied in whole or in part, a written explanation would be provided by either Sun or an insurance company. An adverse decision was to be appealed within 60 days of the date of receiving the denial notice.

Counsel for the defendant distinguishes between the defendant's benefit program consisting of benefit *policies* (leaves of absence, holidays and paid absences) and benefit *plans* (disability, retirement and income continuation). He urges that the plaintiff and the two union representatives (assuming the truth of the contents of the deposition) made an incorrect assumption that the procedure for review of a denial of benefits under a benefit plan applied to a denial under a benefit policy. A search of Exhibit F reveals nothing therein requiring that a denial of benefits under the military leave of absence policy be in writing. Plaintiff, by his counsel, at the hearing conceded the validity of the distinction. He argued that the union representatives told the plaintiff of what they believed to be the "correct method" and that they erred in that regard. He went on to argue that error on the part of the union representatives was the equivalent of a wrongful refusal to process a grievance, which, said he, is a breach of the duty of fair representation.

On August 8, 1980, the plaintiff's attorney sent a claim letter to Mary Burton who sent a return letter in September, denying the benefits requested.

At the hearing on this motion, the plaintiff, therefore, conceded that he did not follow the grievance procedure which is set forth in Article XIII of the collective bargaining agreement which provides for a military leave of absence and informs the reader that any requests for information in this area may be made by employees or by the Employees' Association to the company. In addition, under Article V of the Agreement, any employee may start the mechanism for presentation of a grievance within ten days of the event complained of to the Transport Supervisor or his designated alternate. If that fails, a written grievance to the Area Transport Manager or his designee may be made within ten days after the decision in the first step. There are two additional steps which may be taken if a satisfactory result is not reached. According to the Agreement, the time limits may be extended by mutual agreement of the Association and management. It is undisputed that the plaintiff did not seek redress through the Agreement. It appears, then, that there is no genuine issue of *material* fact to be resolved, and that the law requires that judgment be entered for the defendant in this case.

■ Contract grievance procedures have been recognized by the Supreme Court as a preferred method for settling disputes. "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). In this case the collective bargaining agreement between Sunmark and the Employees' Association provided plainly for a four-step grievance procedure which the plaintiff failed to utilize. In the absence of compliance with the grievance procedure provided by the Agreement, this court is compelled to grant the motion for summary judgment. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976).

The plaintiff here does not complain that the employer repudiated the grievance pro-

cedure provided by the collective bargaining agreement or that the union wrongfully refused to process the grievance, and in such instance this court may not hear a suit by an employee who has not resorted to remedies provided by his contract. *Hayes v. New England Millwork Distributors, Inc.,* 602 F.2d 15, 18 (1st Cir. 1979). *DeArroyo v. Sindicato De Trabajadores Packing,* 425 F.2d 281, 283 (1st Cir. 1970), *cert. denied,* 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970).

■ The plaintiff, as stated hereinbefore, seeks to persuade the court that the union, by its representatives, advised Crosby incorrectly or negligently of the method of asserting his rights. He says that the advice that he received was to use the procedure published in a Sun *benefits book.* This, he says, was error on the part of the union, and asks that the trial court rule that "error is the equivalent of a wrongful refusal to process a grievance". This, plaintiff's counsel equates with a breach of the duty of fair representation.

The Court of Appeals for this Circuit has not, so far as research discloses, held that negligence is equivalent to a wrongful refusal to process a grievance. The *Hayes* decision, *supra,* at page 19 teaches that for the exercise of jurisdiction under Section 301 of the Labor-Management Relations Act, there must be bad faith, arbitrariness or discrimination on the part of the union, or the union must have ignored the grievance or processed it in a perfunctory manner.

■ The general rule, then, is that an individual employee may not sidestep available grievance procedures in favor of a lawsuit. The exceptions to the rule which have been recognized in the First Circuit all appear to be premised upon the filing of a grievance by the plaintiff in the first instance. No authority has been cited to me, nor have I been able to find any authority for the proposition that acting upon misinformation supplied by the union is an excuse for failing to file a grievance in the first place. I see no indication in *Hayes* that a new exception to the exhaustion requirement along the lines of the proposed exception offered by the plaintiff would be acceptable to the Court of Appeals. The flavor of the opinion, authored by Chief Judge Coffin, seems to me to indicate the contrary. *See* footnote 1, 602 F.2d 15, 18.

One additional matter should be noted. The plaintiff argued that there was a question of fact to be determined: whether the termination of his employment actually occurred on May 19, 1979. To hold that he was not so terminated or, indeed, that there is any issue to be resolved along this line would indeed be flying in the face of logic.

■ Finally, we consider the claim of the plaintiff that he utilized an alternative method of appeal by writing to the parent corporation of Sunmark. That claim should have been directed not to this court as a reason for waiver of the exhaustion requirement, but to the grievance procedure agreed upon by the company and the union. It may have been presented as a reason to request that time limitations in the initial step of the grievance procedure be waived. It is a fact that the plaintiff failed to do this. The question of waiver is a grievable matter. *John Wiley & Sons v. Livingston,* 376 U.S. 543, 559, 84 S.Ct. 909, 919, 11 L.Ed.2d 898 (1964). Since there is no factual material issue, one which would affect the outcome of the litigation, *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir. 1975), the defendant's motion for summary judgment must be and is hereby allowed.