Daniel MATTHEWS, et al., Plaintiffs,

v.

TOWN OF NEEDHAM, et al.,
Defendants.

Civ. A. No. 84–0808–T.

United States District Court,
D. Massachusetts.

Oct. 29, 1984.

Carolyn Grace, Deborah Hiatt, Shapiro & Grace, Marjorie Heins, Mass. Civil Liberties Union Foundation, Boston, Mass., for plaintiffs.

William Cross, Needham, Mass., Douglas A. Randall, Quincy, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

The plaintiffs in this case, Daniel Matthews and Philip Lindsay, are residents of the Town of Needham who wish to post political signs on their residential property. They have been deterred from doing so, however, because they fear that a Needham by-law barring the posting of such signs (the "By-Law")[1] would expose them to prosecution.[2] The plaintiffs' concerns are reasonably based. The Town of Needham has indicated its intention to enforce

---

1. Sections 3.2 and 5.1 are the pertinent sections of the By-Law. Section 3.2 states in pertinent part:

   *Permits.* No sign shall be erected ... without a sign permit issued by the Building Inspector following authorization by the Sign Committee, unless specifically exempted from this requirement in Section 5. Permits shall only be authorized for signs in conformance with this Bylaw....

   Section 5.1 states in pertinent part:

   *All Districts.* The following signs are allowed in all zoning districts:

   a) One sign, either attached or free-standing, indicating only the name and/or profession of the owner or occupant, and the street number, not to exceed two square feet in area. Requires no sign permit unless indicating a profession.

   b) An off-premises directional sign....

   c) Temporary signs of not more than twelve sq. ft. area, erected for a charitable or religious cause.

   d) (i) A temporary unlighted real estate sign not larger than eight square feet in area, advertising the sale, rental, or lease of the premises or subdivision on which it is erected requires a permit and payment of a uniform fee to be determined by the Sign Committee

whenever the sign is to be displayed on the premises of the property being offered as stated above by the owner. Real Estate brokers or agents shall obtain a one-year permit for displaying such signs and shall be subject to a uniform fee to be assessed annually in an amount to be determined by the Sign Committee.

(ii) A temporary unlighted sign not larger than twenty-five square feet indicating the name and the address of the parties involved in construction on the premises. Requires no sign permit.

(iii) For a development of six or more lots or dwelling units, a real estate sign not larger than twenty-five square feet at each visible street entrance to the development from a prior existing way.

e) One bulletin board for and on the premises of a public, charitable, or religious institution....

2. The plaintiff Matthews stated in his fourth affidavit that as a result of his posting political signs on his home in November 1982, he received a notice instructing him to appear at the District Court of Northern Norfolk on Needham's application for a criminal complaint. This complaint was evidently not pursued.

the By-Law so as to prohibit the posting of political signs.[3]

The plaintiffs have moved for summary judgment and seek an order enjoining the defendants from enforcing the By-Law with regard to the posting of political signs. Plaintiffs also seek a declaration that the By-Law is unconstitutional on its face, and as applied to them.[4] Plaintiffs' requests are grounded on their assertions that the By-Law violates their First Amendment right to freedom of speech.

In defending the By-Law's constitutionality, Needham relies heavily on the Supreme Court's decision in *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent,* — U.S. —, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). *Vincent* upheld a municipal ordinance prohibiting the posting of any signs in public places, in the face of a challenge by supporters of a candidate for the Los Angeles City Council. The Court reasoned that the city had a legitimate interest in preserving the esthetics of its public areas,[5] that the ordinance was viewpoint neutral, and that there were alternative-means of communication available to the candidate's supporters. *Id.* 104 S.Ct. at 2134.

This case is different from *Vincent* in two crucial respects. In the first place, Needham's By-Law seeks to restrict the types of signs that may be erected on private property. The ordinance in *Vincent,* on the other hand, was limited to the restraint of signs on public property. Indeed, the Court underscored the distinction between private and public property in rejecting the plaintiffs' argument that the ordinance was flawed because it did not

extend to private as well as public property: "[T]he validity of the esthetic interest in the elimination of signs is not compromised by failing to extend the ban to private property. The private citizen's interest in controlling the use of his own property justifies the disparate treatment." *Id.* 104 S.Ct. at 2132.

■ An even more important distinction, however, is that the ordinance in *Vincent* prohibited the posting of all signs, regardless of their content. The Needham By-Law, on the other hand, allows the posting of some signs, but not others. In refuting the plaintiffs' argument that the By-Law discriminates against political speech, the defendants state:

> [T]he plaintiffs' assertion to the contrary, nowhere does the Needham Sign ByLaw "single out political expresion for prohibition." All temporary signs, except small signs erected for a charitable or religious cause, real estate for sale signs, and construction and development signs, are prohibited. Therefore, all temporary personal viewpoint signs are banned.

Defendants' Memorandum in Opposition to Plaintiffs' Summary Judgment Motion at 6. The defendants' thus attempt to put political speech within the broader category of "personal viewpoint" speech in order to assert that the By-Law does not discriminate against political speech. These semantic gymnastics, however, cannot obscure the fact that the By-Law inverts the well-established principle of constitutional law that noncommercial speech is afforded more protection than commercial speech.

---

**3.** In their memorandum in opposition to the plaintiffs' summary judgment motion, the defendants state: "The Needham Sign Bylaw speaks for itself.... The parties agree that the defendants [sic] are not permitted under the Sign Bylaw to erect on their front lawns the temporary political signs they would like to erect." *Id.* at 1–2. Thus, this case is in no way rendered moot by the fact that Matthews was not prosecuted. There is a reasonable expectation that the defendants will again commence proceedings against Matthews and others who post political signs. *See County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

**4.** Both parties agree that there are no material facts at issue. *See Hahn v. Sargent,* 523 F.2d 461 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

**5.** The Court stated: "The problem addressed by this ordinance—the visual assault on the citizens of Los Angeles presented by an accumulation of signs posted on public property—constitutes a significant substantive evil within the City's power to prevent." *Id.* 104 S.Ct. at 2130.

In *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981), San Diego attempted to accomplish a similar inversion with an ordinance regulating billboards that permitted onsite commercial advertising, but prohibited offsite commercial advertising and noncommercial advertising. While the Court upheld the distinction the ordinance drew between off-site and onsite commercial advertising, it went on to state:

> It does not follow, however, that San Diego's general ban on signs carrying noncommercial advertising is also valid under the First and Fourteenth Amendments. The fact that the city may value commercial messages relating to onsite goods and services more than it values commercial communications relating to offsite goods and services does not justify prohibiting an occupant from displaying its own ideas or those of others.... [O]ur recent commercial speech cases have consistently accorded noncommercial speech a greater degree of protection than commercial speech. San Diego effectively inverts this judgment by affording a greater degree of protection to commercial than to noncommercial speech.

*Id.* at 512–13, 101 S.Ct. at 2895.

■ Ignoring the principle that noncommercial speech is given greater protection than commercial speech, the defendants rely on the fact that one of the grounds on which the ordinance in *Vincent* was upheld was its "viewpoint neutrality." Their reliance is misplaced. The *Vincent* Court was not confronted with an ordinance that effectively favored commercial signs to the disadvantage of political messages. Rather, its focus of inquiry was whether the ordinance regulated speech in ways that favored "some viewpoints or ideas at the expense of others." 104 S.Ct. at 2128. The defendants seize on this phrasing of the issue to argue that the By-Law is neutral, because it treats all viewpoints the same in that it prohibits all expression. This is not the sort of "neutrality" that concerned the Court in *Vincent*. Rather, *Vincent* takes as a given the concept that

all non-commercial viewpoints and ideas must be afforded more protection than commercial speech. This attitude is evident in the *Vincent* Court's apparent willingness to extend the pre-eminent status given political speech to other forms of expression that the plaintiff might term "personal viewpoint" speech. Thus in dismissing the plaintiffs' argument that a narrow exception to the ordinance against posting signs on public property should be made for political signs, the Court stated:

> [E]ven though political speech is entitled to the fullest possible measure of constitutional protection, there are a host of other communications that command the same respect. An assertion that "Jesus Saves", that "Abortion is Murder", that every woman has the "Right to Choose", or that "Alcohol Kills", may have a claim that is just as strong as "Robert Vincent—City Council."

*Id.* 104 S.Ct. at 2135.

The Needham By-Law unconstitutionally discriminates against the plaintiffs' First Amendment right to freedom of speech. Furthermore, the By-Law is unconstitutional on its face, since it gives commercial speech more protection than noncommercial speech.

An order will issue.