1. The original complaint named one Leo Bissonette instead of Mr. Marsolais as the Supervisor of Internal Perimeter Security. When it became apparent to the plaintiff's counsel that Mr. Bissonette had retired before any of the acts alleged herein, he quite properly moved to amend the complaint and substitute Mr. Marsolais as the proper defendant. This motion was allowed on June 18, 1986. Unfortunately, the plaintiff never effected service on Mr. Marsolais. Accordingly, this action is dismissed as

(1) Plaintiff's Motion to Withdraw Case from Dispositive Jurisdiction of the Magistrate (Docket No. 49) is DENIED.

(2) The Clerk is directed to refer all pending matters, including Docket Nos. 55, 61, and 62, to Magistrate Cohen for adjudication.

**Ellen SMITH, Plaintiff,**

**v.**

**Michael MALONEY, Individually and in his capacity as Superintendent of MCI–Cedar Junction, Gene Marsolais, Individually and in his capacity as Supervisor of Internal Perimeter Security at MCI–Cedar Junction,[1] Raymond Daigle, Individually and in his capacity as a Deputy at MCI–Cedar Junction, and Michael Fair, Individually and in his capacity as Commissioner of Corrections of the Commonwealth of Massachusetts,[2] Defendants.**

**Civ. A. No. 86–0727–Y.**

United States District Court, D. Massachusetts.

April 23, 1990.

against him since the Court has never acquired personal jurisdiction. Fed.R.Civ.P. 12(b)(5).

2. As Michael Fair is no longer Commissioner of Corrections of the Commonwealth of Massachusetts, this Court will consider only the claim against Mr. Fair individually. In addition, it would make no sense to substitute the present Commissioner for, as will be seen, this case actually concerns a single, discrete incident in 1985.

Kenneth H. Soble, Chestnut Hill, Mass., for plaintiff.

Abbey Ross, Asst. Atty. Gen., Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

On August 22, 1985, a panel of the First Circuit Court of Appeals held in *Blackburn v. Snow*, 771 F.2d 556 (1st Cir. 1985) that a blanket visitor strip search policy was plainly unconstitutional and affirmed an award of $177,040 in damages against the Plymouth County Sheriff and his employer. If nothing else, the present case illustrates that certain members of the bar read the advance sheets.

On February 28, 1986, the plaintiff Ellen Smith ("Smith") filed a complaint in three counts that follows *Blackburn* the way the glove fits the hand. Smith alleged that

"[t]hese defendants have routinely participated in or instructed their agents to conduct strip searches of [her] (Complaint para. 1) ... [o]n various occasions (Complaint para. 9) ... [d]uring the period from December, 1985 to the present ... as a condition precedent to her visitations [to an inmate at the Massachusetts Correctional Institution at Cedar Junction ("MCI–Cedar Junction")] (Complaint para. 11). In her three count complaint, Smith alleged that these searches were, in the absence of any probable cause to believe that she was smuggling contraband, unreasonable and in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution (Complaint, Count I), unduly restrictive of her associational rights guaranteed under the First and Fourteenth Amendments to the United States Constitution (Complaint, Count II), and that Commissioner Fair specifically had violated Massachusetts law in some unspecified way and, in so doing, had deprived Smith of the constitutional rights just enumerated. Those defendants who had been served answered the complaint, and there the matter languished until July 21, 1989, when the defendants Maloney, Daigle, and Fair moved for summary judgment and defendant Marsolais moved to dismiss. For the resolution of Marsolais' motion, *see* note 1, above.

The motion for summary judgment, properly supported by detailed affidavits, substantially narrowed the sweep of Smith's allegations and boiled this case down to a single discrete incident, the facts of which are largely undisputed.

It is now undisputed that at no time material to this case did MCI–Cedar Junction ever have a blanket visitor strip search policy of the nature condemned in *Blackburn*. Specifically, the Massachusetts regulation governing such searches provides as follows:

> With regard to searches that are more intrusive than a pat down ..., unless there is probable cause to search, the

visitor to be searched should be told that he/she may leave the institution rather than submit to the search. If the visitor agrees to the search, he/she shall record such consent by signing a log book kept for that purpose. The searching employee shall enter the date and time of the search and sign the log as well.

103 C.M.R. 483.14(4)(b). What is more, it is likewise undisputed that, while Smith may have visited an inmate at MCI–Cedar Junction on various occasions from December, 1985 and up until the filing of the present complaint,[3] she was subjected to a strip search on only one occasion.

On December 9, 1985, Smith and her young daughter visited an inmate at MCI–Cedar Junction. During the course of the visit, a corrections officer reported to the Shift Supervisor, Lieutenant Rudolph M. De Simone, that the inmate had been overheard saying to Smith, "Wait until it gets crowded, then we will do it." Lieutenant De Simone, purporting to act pursuant to 103 C.M.R. 483.14(4)(b), ordered both Smith and the inmate searched. The inmate was ordered to leave the visitation area and did so. Smith was asked to step into a nearby room. She demurred, asking if the inmate could stay with her daughter while she stepped out. A corrections officer said, "Sesame Street will watch her." Once in the nearby room, Smith was asked to sign the logbook indicating that she consented to be searched. She refused to sign the logbook but thereafter disrobed in the presence of two matrons and moved—at their direction—in such a way as to submit to a visual inspection. No corrections officer touched or probed Smith during the search. No contraband of any sort was discovered.

In view of the striking factual differences between the undisputed evidence in this case, and the blanket visitor strip search policy condemned in *Blackburn v. Snow* and the institutional importance of safeguards against the introduction of contraband into a maximum security prison, *Blackburn*, 771 F.2d at 564; *see Delaware*

---

**3.** Indeed, such visits apparently continued thereafter until August 20, 1986, when Smith was barred from visiting at MCI–Cedar Junction following her arrest, along with the inmate with whom she had been visiting, on charges of trafficking in cocaine and conspiracy to violate the Massachusetts Controlled Substance Act.

*v. Prouse*, 440 U.S. 648, 654–55, 99 S.Ct. 1391, 1396–97, 59 L.Ed.2d 660 (1979), this Court determined upon hearing the motion for summary judgment orally argued on September 22, 1989 that, even if Lieutenant De Simone had been mistaken in concluding that he had reason to order a strip search—a point on which this Court expresses no opinion, the present defendants were entitled to immunity from suit on that issue inasmuch as the order to search is not, in the undisputed circumstances here presented, so clearly improper as to implicate constitutional concerns. The Court so declared from the bench.

■ In one respect, however, the Court ordered further briefing since it is "the function of summary judgment …, 'to pierce formal allegations of facts in the pleadings' … and to determine whether further exploration of the [sic][4] facts is necessary," *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) (quoting *Schreffler v. Bowles*, 153 F.2d 1, 3 [10th Cir.1946], *cert. denied*, 328 U.S. 870, 66 S.Ct. 1366, 90 L.Ed. 1640 [1946], and *Briggs v. Kerrigan*, 431 F.2d 967, 968 [1st Cir.1970]), and that it is the Court's duty not only to rule on the stated claims, but to draw inferences in order to "determine if there are grounds for relief on any possible theory." *Huey v. Barloga*, 277 F.Supp. 864, 872 (N.D.Ill.1967) (citations omitted). The defendants claimed that on the undisputed evidence Smith consented to the search since she offered no resistance. Smith, to the contrary, denies that she submitted willingly and points to the undisputed fact that she never signed the logbook.

■ Upon reflection and review of the post-hearing briefs, this Court rules that, in the absence of a signature in the logbook, a genuine issue of fact exists concerning whether Smith consented to the strip search. As the governing regulation makes clear, the logbook entry requirement was designed to avoid precisely this present dispute. Since Smith never signed the logbook, the issue of her consent *vel non* must be considered still open. What is more, it was clearly the law in 1985 that state officials were required to follow their own regulations and that individuals have a protectable liberty interest in their proper enforcement. *See Royce v. Commissioner of Correction*, 390 Mass. 425, 427, 456 N.E.2d 1127, 1128 (1983). Accordingly, it was a violation of 103 C.M.R. 483.14(4)(b) and Smith's liberty interests to proceed to search her absent her signature in the logbook.

■ Even so, this violation is not material to resolving the instant case. Whatever Smith's possible state law claims for violation of the regulation, her claims here are grounded only on 42 U.S.C. sec. 1983 (1981). The reach of 42 U.S.C. sec. 1983 with respect to claims based solely upon violation of statutes and regulations extends only to the violation of *federal* enactments, not state regulations. *See Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); Cox, "The Supreme Court, 1979 Term" 94 Harv.L.Rev. 1, 223–31 (1980). Next—and more fundamental—there is on this record not the slightest evidence that any of the individuals against whom Smith has brought suit participated either directly or indirectly in her search or were in any way responsible for it other than in promulgating and generally implementing the regulation codified at 103 C.M.R. 483.14(4)(b). As this regulation is neither challenged on its face nor as implemented generally, there is absolutely no causal nexus here between the acts of which Smith complains and the conduct of these defendants.

In retrospect, it appears this Court has indulged this case for far too long at some considerable expense to the Commonwealth. It is time it came to an end. Summary judgment shall enter for all defendants on all counts.

It is SO ORDERED.

---

4. Proper citation of this passage from *Hahn* is complicated by the fact that the First Circuit has apparently inadvertently misquoted *Schreffler* by inserting the pronoun "the" before the word "facts." Hence the sic.