**Claire M. WHITE and John White t/a White's News, et al., Plaintiffs, Appellants,**

v.

**The HEARST CORPORATION and Old Colony News Corporation, Defendants, Appellees.**

No. 81–1300.

United States Court of Appeals, First Circuit.

Argued Sept. 18, 1981.

Decided Jan. 11, 1982.

Rehearing and Rehearing En Banc Denied April 21, 1982.

Steven J. Greenfogel, Boston, Mass., with whom Bruce K. Cohen, and Meredith & Cohen, P.C., Boston, Mass., were on brief, for plaintiffs, appellants.

Andrew R. Laidlaw, Chicago, Ill., with whom Timothy F. Haley, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Gerald May, and Rich, May, Bilodeau & Flaherty, Boston, Mass., were on brief, for defendants, appellees.

Before BOWNES and BREYER, Circuit Judges, and MURRAY,* Senior District Judge.

FRANK J. MURRAY, Senior District Judge.

This appeal puts in issue the propriety of the grant by the district court of summary judgment to defendants/appellees The Hearst Corporation (Hearst) and Old Colony News Corporation (Old Colony) in a treble-damage antitrust action pursuant to Section 4 of the Clayton Act (15 U.S.C. § 15).[1] Hearst is the publisher of the Boston Herald American (the *Herald*), a newspaper published in Boston, Massachusetts, and Old Colony is a wholly-owned subsidiary of Hearst and is responsible for distribution of the *Herald*. Appellants are nine independent news dealers who operated under franchise agreements with Old Colony in the purchase, resale and home delivery distribution of the *Herald*. On July 5, 1979 all franchised news dealers, including appellants, were notified that their franchise agreements upon expiration would not be renewed. This action was brought by the appellants on May 6, 1980 against Hearst and Old Colony to recover damages, costs and attorneys' fees for alleged illegal acts.

In the antitrust claims[2] set out in Counts I and II of the complaint, it is alleged that:

6. For several years past defendants have distributed "The Boston Herald" through franchised dealers such as plaintiffs. Said dealers purchased the newspapers from defendants and, in turn, distributed the newspapers to consumers. In or about August, 1979 plaintiffs were informed by defendants that their franchises would be terminated.

7. Beginning at least as early as January, 1976, defendants have engaged in a contract, combination and conspiracy in restraint of interstate trade and commerce, in violation of Section 1 of the Sherman Act (15 U.S.C. Section 1). In furtherance thereof, defendants have fixed, maintained and stabilized the prices at which plaintiffs could resell the newspapers which they purchased from defendants.

\* \* \* \* \* \*

12. The notice of termination received by each of the plaintiffs was in furtherance of defendants' illegal contract, combination or conspiracy as aforesaid.

[8. and] 13. The effect of the violation alleged herein has been that a not insubstantial amount of interstate commerce has been affected.[3]

Appellees filed their motion for summary judgment with respect to Counts I and II on June 23, 1980, supported by affidavits and a copy of the written franchise agreements.[4] Appellants filed no affidavits or other factual responses to the motion, and

---

\* Of the District of Massachusetts, sitting by designation.

1. Section 4 of the Clayton Act, in pertinent part, provides:

 Any person who shall be injured in his business or property by reason of anything forbidden in the anti-trust laws may sue therefor ... and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee. . . .

2. In addition to the antitrust claims in Counts I and II, pendent state jurisdiction was invoked

under Mass.Gen.Laws ch. 93A, § 2(a) in Counts III, IV and V. No appeal was taken from the district court's dismissal of these counts.

3. Paragraphs 6, 7 and 8 are included in Count I; paragraphs 12 and 13 are in Count II.

4. The appellees filed affidavits of *Dennis E. Mulligan*, who has been general manager of the *Herald*, assistant secretary of Hearst/Boston Newspaper Division, vice-president and director of Old Colony since July 14, 1975; *Eugene A. Czarny*, who began his employment with Hearst/Boston Newspaper Division in

their resistance to it was manifested solely by their memorandum of law and oral argument. The district court granted summary judgment for appellees on Counts I and II following a hearing on November 10, 1980.

The factual details of the affidavits set forth *inter alia* that neither Hearst nor Old Colony nor the *Herald* conspired among themselves or with any other person concerning any of the purposes referred to in the complaint. Further, Hearst, a Delaware corporation, acquired Old Colony, a Massachusetts corporation, and the Boston Herald Traveler (predecessor to the *Herald*) on June 19, 1972. Since Old Colony became a wholly-owned subsidiary of Hearst, the officers and directors of Old Colony have always been employees of Hearst or of the *Herald*. Beginning with the acquisition, Hearst, Old Colony and the *Herald* have operated as a single business enterprise with Old Colony an integral part of the *Herald's* circulation department, and with all decisions concerning franchise agreements of news dealers, including franchise renewals and terminations, made for Old Colony by the *Herald*. There has not been any time since the acquisition in 1972 that Hearst, Old Colony and the *Herald* have held themselves out as competitors of one another. In June 1979 Hearst decided to replace the existing franchised independent news dealer home delivery distribution system of the *Herald* with a system of employee home delivery distribution. Invoking the notice provision of the franchise agreements, Hearst notified all Old Colony dealers, including appellants, on July 5, 1979 that their franchise agreements would

not be renewed upon their expiration.[5] The appellants distributed the *Herald* in cities and towns in the eastern part of Massachusetts. The *Herald* is published in Boston, Massachusetts, and its news and advertising content, local and national, is edited and produced to meet the needs of the Metropolitan Boston market. Newsprint and ink are obtained outside Massachusetts and are stored at the *Herald* premises in Boston until used in the production of the newspaper.

In the district court appellants argued that a parent corporation and its subsidiary *are capable* of conspiracy with one another, and that their complaint "alleges a vertical conspiracy between [appellees] and their independent news dealers." In granting the motion for summary judgment, the district court found on the unrebutted affidavits that since the appellees functioned as a single business entity the appellants' conspiracy claims failed as matter of law.

On appeal, appellants have produced new strings for their bow, for they urge that "summary dismissal is especially inappropriate in antitrust actions," and that the complaint states a cause of action under Section 1 of the Sherman Act. We first address this argument. It appears appellants place great reliance on the language of *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), that "summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." The citation to

1976 as assistant circulation director, and since February 1, 1978 has been circulation director of the *Herald*, and vice-president and director of Old Colony; *Raymond L. Dumont*, who has been resident controller of the *Herald* and Old Colony, assistant treasurer of Hearst/Boston Newspaper Division, and treasurer and director of Old Colony, since December 17, 1973.

**5.** In pertinent part, the notice provision of the franchise agreements follows:

This Agreement shall be for a period of one (1) year from the date hereof, and shall automatically renew itself for successive periods of one (1) year thereafter unless terminated

by either party by written notice given to the other at least thirty (30) days prior to the end of the then current annual period, in which event it shall terminate at the end of said annual period.

In the notice of July 5, 1979, it was also stated that each dealer would receive compensation, as provided in his franchise agreement, for the dealer's subscriber lists; that incentive payments would be made to each dealer who voluntarily agreed to accelerate the expiration date of his agreement; and that each dealer was invited to apply for a supervisory position with the *Herald*.

this language in *Poller* does not surprise; one court has put it that "[t]he often cited *Poller* case ... has become a magic wand waved indiscriminately by those opposing summary judgment motions in antitrust actions." *Mutual Fund Investors v. Putnam Management Co.*, 553 F.2d 620, 624 (9th Cir. 1977). We have carefully examined the arguments of appellants, urged in the district court and here, seeking reference to any peculiar characteristics of their case alleged in the complaint which arguably might make the holding in *Poller* controlling, and we find none. The thrust of their argument is simply that this is an antitrust case and that summary judgment is inappropriate.

Appellants misperceive the reach of Fed. R.Civ.P. 56(e) [6] in advancing this argument. The rule clearly permits summary judgment in any case. Whether summary judgment is appropriate in the particular antitrust case depends upon the peculiar circumstances of the case. The Supreme Court rejected an argument similar to that of appellants in *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, *reh. denied*, 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968), saying: "To the extent that petitioner's burden-of-proof argument can be interpreted to suggest that Rule 56(e) should, in effect, be read out of antitrust cases and permit plaintiffs to get to a jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial in the way of evidence ..., we decline to accept it."

From what can be gleaned of appellants' case as revealed in the complaint, the case appears relatively simple. Moreover, appellants have not argued that this is a case involving complex antitrust litigation. They do not assert that they cannot present by affidavit facts essential to justify their

opposition to summary judgment. Nor do they claim that the state of mind of the alleged conspirators plays a leading part in proving their case. Even assuming that state of mind might be involved, which we need not decide, "that does not mean that a party against whom summary judgment is sought is entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976) (citation omitted). Appellants have presented no "probative evidence tending to support the complaint," *First National Bank of Arizona v. Cities Service Co., supra*, 391 U.S. at 290, 88 S.Ct. at 1593, and we reject their argument that this appeal should be resolved by applying the "motion to dismiss" test of Fed.R.Civ.P. 12(b)(6) to their antitrust complaint. We confine ourselves to a consideration only of the summary judgment issues on appeal.

The purpose of summary judgment is "to discover whether one side has no real support for its version of the facts," *Community of Roquefort v. William Faehndrich, Inc.*, 303 F.2d 494, 498 (2d Cir. 1962), and "to determine whether further exploration of the facts is necessary," *Hahn v. Sargent, supra* at 464 (citation omitted). As the parties moving for summary judgment, Hearst and Old Colony "assumed the burden of demonstrating that there was no genuine issue of material fact." *Over the Road Drivers, Inc. v. Transport Insurance Co.*, 637 F.2d 816, 819 n.4 (1st Cir. 1980). The moving parties met that burden through the affidavits and the copy of the franchise agreements submitted in support of their motion for summary judgment.

---

**6.** Fed.R.Civ.P. 56(e), in pertinent part, provides: When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations ... of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

To defeat the motion, the appellants in opposing it were required, pursuant to Rule 56(c), to "establish the existence of an issue of fact which is both 'genuine' and 'material.' A material issue is one which affects the outcome of the litigation. To be considered 'genuine' ... a material issue must be established by 'sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Hahn v. Sargent, supra* at 464 (citation omitted). While "[i]t has always been perilous for the opposing party neither to proffer any countering evidentiary materials nor file a 56(f) affidavit,"[7] *Adickes v. Kress & Co.*, 398 U.S. 144, 161, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970), quoting 6 J. Moore, Federal Practice ¶ 56.22[2], p. 2824 (2d ed. 1966), ultimately the moving party has the continuing burden, where the record shows no genuine issue as to any material fact, of establishing that he is entitled to judgment as a matter of law.

In determining whether the entry of summary judgment was appropriate here, we examine the record in the light most favorable to appellants, *see Poller v. Columbia Broadcasting System, supra*, 368 U.S. at 473, 82 S.Ct. at 491, indulging all reasonable inferences favorable to the appellants. *Rogen v. Ilikon*, 361 F.2d 260, 266 (1st Cir. 1966). The record must also be viewed in light of the alleged violation of Section 1 of the Sherman Act. To recover under Section 1 appellants must allege and prove (1) the existence of a contract, combination or conspiracy engaged in by appellees (2) which significantly restrained or affected interstate commerce.

 In the field of Sherman Act violations a conspiracy, as in other proscribed conspiracies, imports a plurality of persons acting in concert to attain a common goal or purpose. *Mutual Fund Investors v. Putnam Management Co., supra* at 625. Appellants' complaint does not identify the alleged conspirators or the persons involved in the alleged combination, and does not set forth particulars of the nature or the formation of the combination. The affidavits submitted by the appellees refuted the general conclusory allegations of conspiracy and combination, demonstrating by flat denials of these allegations that there existed no genuine issue of material fact. It then became appellants' burden to present factual materials that might have been admissible at trial as evidence to support the complaint. This they have not done. Absent a presentation of factual data, appellants did not create a triable issue of fact sufficient to defeat a motion for summary judgment by arguments of counsel in legal memoranda that a vertical conspiracy between appellees and appellants was alleged in the complaint and ignored by the district court. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241, *reh. denied*, 441 U.S. 968, 99 S.Ct. 2420, 60 L.Ed.2d 1074 (1979).

Neither did appellants dispute the accuracy of the copy of the franchise agreements filed with the affidavits. Absent factual materials to dispute the copy, the record shows that the franchise agreement contained no provision for resale price maintenance of the *Herald*. Nor were there any factual materials to support the allegation of the complaint that "the notice of termination ... was in furtherance of defendants' illegal contract, combination or conspiracy ...." The affidavits demonstrated that concerning the notice to the news dealers there was no genuine issue of material fact (1) that appellees decided not to renew any of the independent news dealers' agreements, (2) that under the franchise agreement each party had the unrestricted option on proper notice to the other not to renew the agreement, (3) that the notice given by

---

7. It was open to appellants to invoke the provisions of Fed.R.Civ.P. 26 to 38, both inclusive, to develop such evidence, and to avail themselves of the opportunity under Rule 56(f) to present affidavits to the court setting forth the reasons why they could not "for reasons stated present by affidavits facts essential to justify [their] opposition," and thereby invoke the discretion of the court to allow discovery under Rule 56(f), to refuse the application for summary judgment, or to make any other order which might be appropriate in the situation.

the appellees of non-renewal was proper notice under the agreement, and (4) that the reason that none of the news dealers' agreements were renewed was that appellees decided to effect a complete replacement of the existing system by an employee system of home delivery distribution.

While appellants are entitled to all favorable reasonable inferences supported by the record, they are "not entitled to build [their] case on the gossamer threads of whimsey, speculation and conjecture." *Manganaro v. Delaval Separator Co.*, 309 F.2d 389, 393 (1st Cir. 1962); *see Hahn v. Sargent, supra* at 467. Nevertheless, we have thoroughly considered the factual showing of the appellees in support of their motion for summary judgment to determine whether the facts presented afford sufficient support for inferences favorable to appellants' claim.

We find no support for any inference that appellees' replacement of the independent news dealer system of home delivery distribution by an employee system violated Section 1 of the Sherman Act. We pointed out in *Auburn News Co., Inc. v. Providence Journal Co.*, 659 F.2d 273, 278 (1st Cir. 1981), that the change by a newspaper publisher of its system of newspaper distribution from that of independent news dealers to distribution by its own employees, *without more*, does not violate Section 1. Here, the contract right of appellees to end the relationship with the news dealers after proper notice is not disputed, nor is the propriety of the actual notice challenged. Furthermore, there is no basis for an inference that the change in systems was intended to or did in fact bring about some restraint of trade. If nothing more can be shown than some adverse effect on the distributor's business,[8] there is no unlawful restraint of trade. *Knutson v. Daily Review, Inc.*, 548 F.2d 795, 803 (9th Cir. 1976), *cert. denied*, 433 U.S. 910, 97 S.Ct. 2977, 53 L.Ed.2d 1094 (1977). There is nothing in the record to support an inference that the purpose or motive of the appellees in effecting the change in systems was other than that set forth in the affidavits. Appellants are not entitled to reversal on this phase of their claims.

Neither do we find anywhere in the record support for an inference favorable to appellants' allegation of a price-fixing claim against appellees. Not only was appellants' bald allegation of appellees' engagement in a conspiracy or combination to violate Section 1 flatly denied, but appellees produced a copy of the franchise agreement which contains no provisions for resale price maintenance of the *Herald*. Nor is there support elsewhere in the record for an inference of appellees' engaging in a conspiracy or combination to force appellants or other news dealers to maintain a specified resale price for the newspaper.[9] If appellants relied upon factual sources other than their franchise agreements to support their allegations, they had adequate opportunity to present materials from such sources to the district court.

---

8. Appellants have not argued that adverse effect on the news dealers' businesses resulted from the change in systems, or that such adverse effect would be an unlawful restraint of trade. It is obvious that non-renewal was always a likelihood and would, when it occurred, likely result in consequences adverse to the business of one or the other or both parties. In the absence of evidence to support an inference that the non-renewal option in the contract was utilized to foster or promote an unlawful competitive scheme, the appellees were free to invoke it.

9. We are not impressed with appellants' contention that *Albrecht v. Herald Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998, *reh. denied*, 390 U.S. 1018, 88 S.Ct. 1258, 20 L.Ed.2d 169 (1968), is "a case virtually identical to" their case here. We perceive that there are crucial differences between the cases. In *Albrecht* the Supreme Court held that an illegal restraint of trade under Section 1 of the Sherman Act was shown on *uncontradicted facts of record* that the newspaper publisher formed a combination with other persons to *force* the independent news dealer to maintain a specified price for resale of the newspaper which he had purchased from the publisher. Here, unlike *Albrecht*, no factual materials were presented which would raise an inference of the existence of such combination and the appellants themselves, in their brief, removed any doubt as to the state of the record by their admission that "the record is completely devoid of any evidence as to whether the defendants engaged in illegal resale price maintenance."

"[S]ummary judgment cannot be defeated by the vague hope that something may turn up at trial." *Perma Research and Development Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969). Assuming the allegations of the complaint are sufficient to stand as a pleading charging illegal price fixing, which we need not decide, where the complaint is unsupported by factual particulars in the record disclosing a triable issue on price fixing which can be called genuine it is insufficient to defeat a motion for summary judgment. Here, appellants' price-fixing argument is grounded solely on the allegations of the complaint. There was no error in the district court's grant of summary judgment for the appellees.

*Affirmed.*