**MIL/5 CASH & CARRY CORP.,**
**Plaintiff,**

v.

**The GRAND UNION COMPANY,**
**Defendant.**

**Civ. No. 81–0134 JP.**

United States District Court,
D. Puerto Rico.

Aug. 30, 1983.

Harold Toro Toro, Hato Rey, P.R., for plaintiff.

José Ortíz Siragusa, San Juan, P.R., for defendant.

OPINION AND ORDER

PIERAS, District Judge.

Pending before the Court are plaintiff's Motion and defendant's Crossmotion for Summary Judgment.

Plaintiff, Mil/5 Cash & Carry Corp. (hereinafter "plaintiff" or "Mil/5") filed this action before the Superior Court of the Commonwealth of Puerto Rico, San Juan Part [1] seeking declaratory and injunctive relief as well as damages because defendant allegedly infringed a trademark which plaintiff claims to have used in commerce since 1979. In support of its claims, plaintiff incorporates, as an integral part of its pleadings, a certificate of trademark registration issued by the Department of State of the Commonwealth of Puerto Rico. The mark in question is: "Basics Supermarket Warehouse". Plaintiff further alleges that the infringement consists of defendant's use of a similar mark, "Basico Food Warehouse" on or about September, 1980.

Defendant Grand Union Company (hereinafter "defendant" or "Grand Union"), in turn denies that it has ever infringed plaintiff's mark and contends that it is plaintiff which is currently infringing defendant's trade or service mark duly registered in the U.S. Patent and Trademark Office. To that effect defendant has filed a counterclaim (alleging prior use of its mark in interstate commerce) seeking injunctive relief and damages.

At a Status Conference held on April 19, 1983 both parties agreed that the case could be disposed of by way of summary judgment since there were no genuine and material issues of fact warranting a fulldress trial. Basically, disposition of plaintiff's Complaint and defendant's Counterclaim hinges on whether as a matter of law and on the basis of certain undisputed facts appearing of record, each party is entitled to the relief it seeks.

We now pass on to state part of the procedural *scenario* of this action as well as the undisputed facts to which the pertinent trademark law is to be applied.

## I

Plaintiff first moved for summary judgment in its favor.[2] In support thereof, it submitted a certification by the Department of State of the Commonwealth of Puerto Rico which states that on April 18, 1980, Mil/5 filed in said Department an application for the trademark "Basics Supermarket Warehouse", which was registered on August 5, 1980, in favor of Mil/5, its legal owner. The certification also covers certain annexed documents such as Mil/5's Petition, Statement, Affidavit and proof of publication of the facsimile of the mark by a local newspaper.[3] Additionally, plaintiff submitted in support of its motion, a sworn statement by its president, René Iglesias Fernández, which states that Mil/5 is the legal owner of a trademark known in commerce since January 19, 1979 by the name of Basics Supermarket Warehouse, that food, meat, vegetables, and other products are sold as retail in the cash and carry operated by Mil/5, and that since September, 1980, Grand Union has caused confusion in the minds of consumers by publication of the name "Basico" through advertising, to the point of customers asking for discounts advertised by Basico. Plaintiff also alleges that the imitation of Mil/5's "tradename" has caused trouble, stopped expansion of Mil/5 and caused damages, and that to the best of affiant's knowledge and belief the name Basico Food Warehouse was first used in Puerto Rico on September 14, 1980.

On April 28, 1982, defendant opposed plaintiff's motion for summary judgment and in turn moved for summary judgment in its favor not only requesting dismissal of plaintiff's Complaint, but also injunctive relief, damages, and an order of cancellation of plaintiff's trademark as per a counter-

---

1. This action was properly removed by defendant to this Court on diversity grounds. Plaintiff is a corporation organized under and has its principal place of business in Puerto Rico while defendant is organized under the laws of Delaware and has its principal place of business in New Jersey. More than $10,000 are in controversy. See, 28 U.S.C. §§ 1332 and 1446.

2. This motion was filed on March 11, 1982.

3. These documents also form integral part of the original pleadings of plaintiff's Complaint, since they are annexed as exhibits thereto. F.R.Civ.Proc. 10(c).

claim previously filed on February 24, 1981.[4]

In support of its motion for summary judgment, Grand Union submitted a statement of material facts not in controversy, supported by affidavits, documents and admissions from an excerpt of a deposition of plaintiff's President taken February 23, 1981.

From Grand Union's statement of material facts, which was never properly controverted by plaintiff, it appears that Mil/5 actually existed as a corporation from April 1, 1980, when it filed its Articles of Incorporation with the Puerto Rico State Department, and that said corporation commenced operations as a cash and carry store on June 26, 1980, when it first opened its doors to the public, never before having done so in Puerto Rico. Also, it was not until after September 24, 1980, that plaintiff first placed a sign with the text "Basic Supermarket Warehouse", inside its store, which was ordered by its advertising agency and that as of September 14, 1980, when Grand Union commenced to operate one of its stores utilizing "Basico Food Warehouse" to sell products having affixed the trademark "Basico" or "Basics" ("Basico" is the Spanish equivalent of "Basics"), Mil/5 had never advertised the name "Basics Supermarket Warehouse" nor sold, as of that time, any products bearing such name or mark.

Grand Union first used the trademark "Basico" or "Basics Food Warehouse" on July 2, 1979, and applied for its registration on October 31, 1979 at the United States Patent and Trademark Office having used it in commerce since September 16, 1979.[5] It further appears from Grand Union's statement and supporting evidence that Grand Union has registered its mark in a number of states since 1979, and that it commenced and has continued to use the mark "Basics" and/or "Basico" in connection with products sold at its stores and supermarkets in Puerto Rico ever since May 19, 1980, when said products were shipped to Puerto Rico for the first time in interstate commerce.

Finally, the evidence proffered also shows that Grand Union has used its trade and service mark in connection with products bearing the mark in approximately 800 stores which it owns in Continental United States; that Grand Union operates or has operated 8 "Basico Food Warehouses" stores in Florida, 7 in Washington, 4 in New Jersey and one in Puerto Rico and that in connection with a visit to Miami, Florida, Mr. Iglesias, plaintiff's president, became aware of the existence of Grand Union's Basic Food Warehouse stores in that State.

After the motions for summary judgment had been filed, each party submitted replies in support of their respective positions. Plaintiff submitted an affidavit of its President, which more or less restated what the prior affidavit had said and duplicated in general fashion the allegations of the Complaint. The affidavit states that plaintiff's President, in a personal capacity was engaged in the industry of selling and buying foods back in 1978, that he had done such business activity personally due to a lack of economic capacity; that in connection with such business activity the name Basics Supermarket Warehouse was used personally and interruptedly since 1979; and that when his economic capacity developed he made Mil/5 and registered "Basics Supermarket Warehouse" in the name of the corporation. Plaintiff also submits excerpts of Mr. Iglesias' deposition, with testimony in Spanish to the effect that the idea of Basic Supermarket Warehouse was to be used to expand the consumer sales of a Mil/5 cash and carry store in an adjacent lot.

Thereafter, Grand Union, in its reply, moved to strike plaintiff's second affidavit as being irrelevant, inasmuch as the only plaintiff in this action is Mil/5 and not its President. Defendant also submitted ex-

---

**4.** This counterclaim was included with defendant's Answer to the Complaint. It was answered by plaintiff on May 19, 1981.

**5.** The trademark was registered in the United States Patent and Trademark Office on June 30, 1981 under Registration No. 1,159,551, as a service mark.

cerpts from plaintiff's deposition wherein Mr. Iglesias states that the name or mark in question, belongs exclusively to Mil/5.[6]

## II

In determining whether or not to grant or deny the parties' respective Motions for Summary Judgment, we are guided by the standards established in Fed.Civ.Proc. 56(e):

> "When a motion for summary judgment is made and supported ..., an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits, or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

As the rule indicates, a movant must first satisfy his burden of establishing the absence of genuine and material issues of facts. *Mack v. Cape Elizabeth School Bd.*, 553 F.2d 720 (1st Cir.1977). Once he has made this *prima facie* showing, the opponent must submit competent and admissible evidence specifically rebutting the initial showing made by movant.[7] See, e.g., *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

The purposes of the summary judgment rule are (1) to avoid unnecessary trials, *Goodman v. Mead Johnson & Co.*, 534 F.2d 566 (3rd Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.1975), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1976); (2) to streamline the adjudication process, *Staren v. American Nat'l. Bank & Trust Co. of Chicago*, 529 F.2d 1257 (7th Cir.1976); and (3) to guard against delay and harassment, *Apton v. Wilson*, 506 F.2d 83 (D.C.Cir.1974). Summary judgment is geared to "discover whether one side has no real support for its version of the facts", and "to determine whether further exploration of the facts is necessary". *White v. Hearst Corp.*, 669 F.2d 14, 17 (1st Cir.1982) (*quoting from Community of Roquefort v. William Faehndrich, Inc.*, 303 F.2d 494, 498 (2d Cir. 1962) and *Hahn v. Sargent, supra, Id.*) All of these purposes would be frustrated if an opponent to a properly supported motion for summary judgment were able to defeat it by merely rephrasing or relying upon his pleadings and/or making statements in connection with his opposition without submitting competent supporting evidence. Hence, "it is the function of summary judgment ... 'to pierce formal allegations of facts in the pleadings ...'" *Hahn v. Sargent, supra, Id.* (quoting from *Schreffler v. Bowles*, 153 F.2d 1, 3 (10th Cir.1946) aff'd. 328 U.S. 870, 66 S.Ct. 1366, 90 L.Ed. 1640 (1946).

With these principles in mind, we turn to assess plaintiff's and defendant's motions for summary judgment in light of pertinent trademark law.

**6.** On July 6, 1981, defendant filed a Motion for Partial Dismissal of René Iglesias as a party plaintiff in the action, in view of the fact that the mark alleged to be infringed belongs to Mil/5 and not to Mr. Iglesias. In an Informative Motion, filed nine days later on July 15, allegedly in reply to defendant's Motion for Partial Dismissal, plaintiff admitted and stressed that the only exclusive legal owner of the mark had always been Mil/5. He also requested the Court to deny plaintiff's Motion for Partial Dismissal as having been improvidently filed. On July 28, 1981 the Court entered Partial Judgment dismissing the action as to René Iglesias (Mil/5's president) for failure to state a claim.

**7.** In a case such as this one, wherein both plaintiff and defendant move for summary judgment, each party must satisfy both the initial burden and the requirement of specificity in the opposition. In deciding whether to grant or deny each motion, we have, of course, "look[ed] at the record ... in the light most favorable to ... the party opposing the motion ..." ... [and] "indulg[ed] all inferences favorable to the party opposing the motion". *Hahn v. Sargent, supra, Id.* (quoting from *Poller v. Columbia Broadcasting System*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1972) and citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) and *Rogen v. Ilikon*, 361 F.2d 260, 266 (1st Cir.1966).

■ Mil/5 has not established with competent and admissible evidence that it has used the trademark "Basics Supermarket Warehouse" in commerce prior to Grand Union's use of the trademark "Basico Food Warehouse".

Prior use is crucial test in determining whether a particular litigant can prevail in a trademark infringement action:

"Trademark and service mark rights arise out of use. The exclusive right to a distinctive mark *belongs to the one who first uses it in connection with a particular line of business.* In this country trademark rights are *acquired only by prior use,* not by registration. [footnotes omitted] (Emphasis added.)

3 R. Callman, *Unfair Competition Trademarks and Monopolies,* § 19.01 (4th Ed. 1983).

At most, what Mil/5 has established is that it has used the "Basics Supermarket Warehouse" mark in connection with the sale of its products in a cash and carry store sometime after it was organized as a corporation on April 1, 1980. Moreover, plaintiff has not been able to muster any specific facts which could possibly create a triable issue over its use of the mark. Neither plaintiff's first affidavit (in support of its motion for summary judgment) nor the second one (in reply to defendant's motion), establish dates of use of the mark "Basics Supermarket Warehouse" prior to the first use by Grand Union made on July 2, 1979 in Continental United States, and May 19, 1980, in Puerto Rico. Indeed, even if plaintiff were to have used the mark when its cash and carry operation commenced on June 26, 1980,[8] it would still not be entitled to use the mark so as to establish its infringement by Grand Union, for the latter has specifically established use of its mark prior to that date.

■ Plaintiff's counsel's protestations to the contrary in his arguments in support of summary judgment will not do, since, it is well-established that a party may not oppose a motion for summary judgment based upon the arguments made by its attorneys in any memorandum. *White v. Hearst Corporation, supra,* 669 F.2d at 18 (1st Cir.1982) and *cases cited.*

Additionally, an examination of plaintiff's two affidavits, complaint, State Department record and deposition excerpts reveal that they are insufficient to establish the prior use necessary for this Court to find an infringement on the part of defendant.

It is undisputed that the *only* plaintiff in this action is Mil/5. Plaintiff itself conceded as much in its Informative Motion in opposition to defendant's request for Partial Dismissal of Mr. René Iglesias as co-plaintiff in this action.[9] Whatever use was made of the mark in 1979, is totally irrelevant to Mil/5's cause of action for

"who originated the mark is immaterial. On the issue of priority, proof of an earlier conception is of no relevance . . . the trademarks or trade names used by a corporation are owned by the corporation and not by its president or management team . . ."

*Callman, Id.*

Plaintiff has failed to present any evidence whatsoever showing that the mark "Basics Supermarket Warehouse" was ever assigned, transferred or sold to Mil/5. The mark is registered in the name of Mil/5 and no indication as to Mil/5's date of incorporation appears in the Petition for Trademark Registration and related documents filed before the Department of State of

---

8. In support of its cross-motion and opposition to plaintiff's motion for summary judgment, Grand Union submitted the affidavit of a former Vice-President of Mil/5, Mr. Ernesto Bobonis Piñero, who stated under oath and of his own personal knowledge that during his tenure (which covers the period March through October, 1980) ". . . the trademark Basic Supermar-ket Warehouse was never utilized in any article. Even less before 1979, since the business did not exist . . ." To this date, the contents of this affidavit remain uncontroverted by plaintiff, nor has plaintiff moved to strike the same. Such assertions must therefore be accepted as true by us, for summary judgment purposes.

9. See note 6, *supra.*

Puerto Rico.[10] Additionally, plaintiff has not shown with competent and admissible evidence that the public ever perceived the mark to be other than that of Mil/5. *Callman, id.,* at § 19.16.

■ Finally, plaintiff's affidavits utterly fail to comply with the requirements of Rule 56(e), that they be of the personal knowledge of the affiant or that they set forth facts as would be admissible in evidence.

These affidavits do not contain any assertion that plaintiff's President is making the statements out of his personal knowledge. The statements made are both irrelevant and conclusory in nature. Under these circumstances, we strike plaintiff's affidavits as insufficient for summary judgment purposes. It could not be otherwise, for "conclusory allegations, unsupported by factual data do not create a triable issue of fact" and these affidavits "do not go beyond the sort of unsupported assertions more appropriately confined to the pleadings. They are insufficient to defeat a properly supported motion for summary judgment". *Over the Road Drivers Inc. v. Transport Ins. Co.,* 637 F.2d 816, 819 (1st Cir.1980) and *authorities cited.*

In view of the foregoing, we deny plaintiff's Motion for Summary Judgment, as legally insufficient to establish any infringement of the "Basics Supermarket Warehouse" trademark on the part of defendant.[11]

### III

We turn now to Grand Union's cross motion for summary judgment. Although Grand Union seeks dismissal of plaintiff's Complaint for failure to establish infringement, it also seeks affirmative relief in the form of damages and an injunction prohibiting further use of the term "Basics" or "Basico"[12] by defendant, as well as an order addressed to the Secretary of State, for cancellation of plaintiff's registration of the mark "Basics Supermarket Warehouse".

Grand Union has shown that it has used the trade or service mark "Basico" in commerce, prior to plaintiff's use of the similar mark "Basics" in conjunction with "Supermarket Warehouse". Mil/5's infringement claims, therefore, cannot stand and should, accordingly, be dismissed in view of plaintiff's total failure to present " 'probative evidence tending to support the complaint' ". *White v. Hearst Corp., supra,* 669 F.2d at 17, *quoting from, First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). In view of the fact that there is no just reason for delaying final judgment on plaintiff's claims, we hereby make the express determination to that effect and

---

10. Puerto Rico's Trademark Registration Law and Regulations presuppose that an applicant will act in good faith and make a sufficient disclosure to the Secretary of State, so that the latter may register any particular trademark without infringing the rights of others to use of the mark. See, e.g., 10 R. & R.P.R. § 206–1 (providing that all matters before the State Department relating to trademark applications shall be based exclusively on the writings submitted to the Trademark Registry Office). In the unsworn statement made by plaintiff in the State Department a representation is made that the applicant has used the mark since 1979. No statement is made that it was really Mr. Iglesias who had used the mark in 1979. This absence of any indication that as of that time— 1979—Mil/5 did not exist as a corporate entity, coupled with the Secretary's reliance on the representations made by applicant, explain the ensuing automatic registration in the name of Mil/5.

11. We need not discuss in detail plaintiff's argument that plaintiff's mark, having been registered in Puerto Rico, contrary to defendant's mark which is only registered in the United States Trademark and Patent Office, is entitled to preference. See, e.g., *Rheingold Breweries, Inc. v. Antilles Breweries, Inc.,* 353 F.Supp. 877 (D.C.P.R.1973). Even if we were to agree with plaintiff's local preemption argument, still plaintiff has not established prior use of its mark under the Puerto Rico Trademark Law. Defendant's prior use arises out of Federal Law and this Court must accord it protection. *Keebler v. Rovira,* 624 F.2d 366, 371–372 and n. 2 (1st Cir.1980). See, note 14, *infra.*

12. Defendant has disclaimed exclusive use of the terms "Food Warehouse" in its applications for registration, as they appear on the files of this Court.

order the judgment of dismissal to be entered pursuant to Fed.R.Civ.Proc. 54(b).[13]

The grant of the affirmative relief sought by defendant against plaintiff and the Puerto Rico Secretary of State, however, warrants further comment and discussion.

Grand Union's infringement counterclaim is governed by federal substantive law, to wit, the Lanham Act, 15 U.S.C. §§ 1051–1127 (1978).[14]

■ Section 32 of the Lanham Act, 15 U.S.C. § 1114, grants a federal registrant, such as Grand Union, a right to protect its proprietary interest in a registered mark by means of a suit for injunctive and monetary relief. Additionally, section 14 of the Act, 15 U.S.C. § 1064, authorizes a party aggrieved by a competing or confusing or incompatible registration of a similar mark, to bring a petition for cancellation of such registration. This may be done either by way of a separate and independent action or as a counterclaim in an infringement suit, such as the one brought here initially by Mil/5. *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 373 (1st Cir.1980) (citing *Sylvania Electric Products v. Dura Electric Lamp Co.*, 247 F.2d 730 (3rd Cir. 1957)).

Furthermore, Section 33(a) of the Lanham Act, 15 U.S.C. § 1115(a), grants to any registration under such Act the presumption of being "prima facie evidence of registrant's exclusive right to use the registered mark in commerce". *Keebler, supra,* at 373. Of course, a defending party to such suit may rebut such presumption by preponderance of evidence pointing to a defect in the registration. *Id.*

■ Applying the foregoing statutory criteria to the case at hand, we find that Grand Union has, through evidence of registration of its mark "Basics Supermarket Warehouse" established *prima facie* proof of its exclusive right to use the mark in commerce. This *prima facie* evidentiary presumption has not been controverted at all by plaintiff Mil/5. Indeed, if anything, it has been strengthened by Mil/5's failure to establish prior use of its mark and its presentation of proof to the effect that consumer confusion has ensued as a consequence of Grand Union's advertisement of sales at its "Basico Food Warehouse" store.[15] Moreover, aside from this presumption, Grand Union has established beyond doubt prior use in commerce of its mark. Grand Union is thus entitled to protect its proprietary rights to the "Basico" mark and prevent plaintiff from in any way "passing off" its goods as those of defendant or appropriating to itself defendant's good will. Additionally, Grand Union is entitled to an accounting for profits realized by Mil/5 on account of its unauthorized use of the mark as well as to any damages it may be able to establish as being attributable to plaintiff's infringement.

Accordingly, we grant defendant Grand Union's cross-motion for summary judgment not only to the extent that it seeks dismissal of plaintiff's Complaint but also as to specific enforcement of its proprietary rights to the mark "Basico", given the unquestionable liability, on the basis of the

---

**13.** Rule 54(b) provides, in pertinent part, as follows:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim ... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only upon an express determination that there is no just reasons for delay and upon an express direction for the entry of judgment."

**14.** The fact that the diversity jurisdiction of this Court has been invoked is entirely compatible with application of the Lanham Act to defendant's infringement claims, for as a federal court we are bound by applicable federal law whether or not it is expressly pleaded. *Keebler Co. v. Rovira Biscuit,* 624 F.2d 366, 371 n. 2 (1st Cir.1980). Puerto Rico's Trademark Legislation, however, also supplies an additional and supplemental Substantive Rule of Decision and fully justifies the results at which we have arrived in this Opinion and accompanying Judgment. See note 17, *infra.*

**15.** See, Paragraph 5 of the Affidavit of Mr. René Iglesias, President of Mil/5, dated March 10, 1982 in support of plaintiff's motion for summary judgment.

evidence presented, of Mil/5 to Grand Union for trademark infringement under the Lanham Act.[16]

## IV

For the above stated reasons, final judgment is to be entered dismissing plaintiff's Complaint pursuant to Fed.R.Civ.Proc. 54(b). As to defendant's cross-motion for summary judgment, partial judgment shall be entered granting the injunctive relief requested in the counterclaim.

Additionally, an Order shall be issued by this Court addressed to the Secretary of State of the Commonwealth of Puerto Rico cancelling plaintiff's registration of the so-called trademark "Basic Supermarket Warehouse".[17]

In view of the fact that plaintiff's attitude was manifestly obstinate in continuing to prosecute its Complaint and Motion for Summary Judgment without any evidentiary support, we believe that defendant should recover attorneys' fees in the amount of $1,000.00, in addition to costs.

Defendant is to inform the Court within ten (10) days after entry of this Order whether it intends to further prosecute its damage petition, so that appropriate disposition of the same can be made by the Court, through an evidentiary hearing or otherwise.

THE CLERK SHALL ACT ACCORDINGLY.

IT IS SO ORDERED.

---

**16.** The same results are obtained by applying trademark infringement principles under the laws of Puerto Rico. See, note 14, *supra*.

**17.** Act No. 66 of July 23, 1923, as amended, 10 L.P.R.A. § 203 (the Puerto Rico Trademark Statute) establishes an action for damages against any person obtaining the registration of a trademark in the Department of State by a false or fraudulent declaration or representa- tion. Without characterizing as fraud plaintiff's statements in support of its trademark registration, the unavoidable conclusion is that at least false declarations or representations were made. This in itself constitutes an additional and independent basis for the conclusions we have reached in this Opinion and the relief being granted, including the cancellation decreed herein.