**CÍA. PETROLERA CARIBE, INC., Plaintiff,**

v.

**AVIS RENTAL CAR CORPORATION, et al., Defendants.**

**Civ. No. 82–0062 (JP).**

United States District Court, D. Puerto Rico.

Dec. 2, 1983.

Celso E. López, San Sebastián, P.R., and Carlos F. López, Santurce, P.R., for plaintiff.

Alfredo Castro Mesa, Caparra Heights, P.R., for Prentals, Inc. d/b/a Nat. Car Rental.

Manuel A. Guzman, McConnell, Valdes, Kelley, Sifre Griggs & Ruiz-Suria, San Juan, P.R., for Avis Rental Car Corp.

Salvador Antonetti, Fiddler, González & Rodríguez, San Juan, P.R., and Arthur H. Kahn, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Hertz Rental Co.

Alan S. Ward and Jeffrey S. Holik, co-counsel Baker & Hostetler, Washington, D.C., for Avis.

## ORDER

PIERAS, District Judge.

### I.  INTRODUCTION

The plaintiff in this action, Cía. Petrolera Caribe, Inc. (Caribe), seeks injunctive relief and treble damages for violation of the federal antitrust laws.  The gist of Caribe's complaint is that the defendants, Avis Rent A Car de Puerto Rico, Inc. (Avis), Puerto Ricancars, Inc. (Hertz), and Prentals, Inc. (National), have engaged in practices con-

stituting an illegal "tie-in" in violation of Section 3 of the Clayton Act and Section 1 of the Sherman Act.[1]

Plaintiff asserts in Count I that under the terms of contracts between the defendants and their respective car rental customers, those customers who wish to rent a car are "forced" to buy from the defendants the gasoline which the car consumes. Plaintiff avers this to be an illegal tying arrangement in restraint of trade in the sale of gasoline. Plaintiff alleges that this action curtails the available market for gasoline and forecloses sales to customers who might otherwise have bought gasoline from him.

The second count of the complaint alleges that under the terms of "illegal arrangements and contracts," the defendants have conspired to restrain free trade in gasoline in violation of Section 1 of the Sherman Act. Although the basis of this charge is unclear from the complaint, Caribe's Vice President testified at his deposition that what Caribe alleges in Count II is

> that the consumer does not have the choice of buying from any other company, from any other retailer ... But we are not alleging that the three of you (referring to the defendants) have gotten together and conspired against us in that—uh—in those terms. We are alleging that the consumers are deprived of having their choice.

Deposition of Felipe M. López (López Deposition) at 73–74.[2] Thus, Count II is duplicative of Count I and will be treated herein as raising no additional claim.

Presently before the Court is a joint motion of all defendants to dismiss the complaint or, in the alternative, for judgment on the pleadings under Rules 12(c) and 56 of the Federal Rules of Civil Procedure. Because the parties have submitted motions and memoranda supported by affidavits, the Court will treat this as a motion for summary judgment.

Defendants contend, first, that this Court lacks jurisdiction to hear this case because none of the acts complained of occur in or affect interstate commerce. Defendants also challenge plaintiff's standing to sue under the antitrust laws, contending that a wholesaler, such as the plaintiff, may not assert an antitrust claim relating principally to retail competition. Finally, defendants argue forcefully that the plaintiff has failed to establish any conduct on defendants' part that violates the antitrust laws.

## II. FINDINGS OF FACT

1. Plaintiff, Cía. Petrolera Caribe, is a Puerto Rican Corporation engaged in the business of wholesaling petroleum products, including gasoline and diesel oil. Caribe purchases these products from refiners and resells them to approximately forty retailers, *i.e.*, service stations operating in Puerto Rico under the "Caribe" name. López Deposition at 15–17.

2. Caribe owns, but does not operate, a small number of these service stations; these are leased to, and operated by, independent parties. The remainder are both owned and operated by independent parties. *Id.* at 20–21.

3. Caribe conducts business solely in Puerto Rico, and has no offices, employees, installations, or equipment outside of Puerto Rico. *Id.* at 16, 21.

---

**1.** Section 3 of the Clayton Act, 15 U.S.C. Sec. 14 (1976), provides in pertinent part:

> It shall be unlawful for any person engaged in commerce ... to lease or make a sale ... of goods, wares, merchandise, machinery, supplies, or other commodities ... for use, consumption, or resale ... on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor ... of the lessor or seller, where the effect

(thereof) ... may be to substantially lessen competition ...

Section 1 of the Sherman Act, 15 U.S.C. Sec. 1, prohibits contracts, combinations and conspiracies in restraint of trade.

**2.** Mr. Felipe M. López is a director, Vice President and Treasurer, as well as a shareholder, of Caribe. In addition, he is the officer primarily responsible for the day-to-day operations of the company. López Deposition at 6, 8–9, 15.

4. Caribe does not engage, and never has engaged, in the retail sale of petroleum products, including gasoline. *Id.* at 15.

5. Neither Caribe nor any of its related retail service stations engages in the business of renting cars. *Id.* at 24.

6. Caribe has never either offered to sell or actually sold any gasoline to any car rental company. *Id.* at 27–29.

7. One of the independently-owned service stations to which Caribe wholesales its products is located at the San Juan International Airport. *Id.* at 18.

8. Co-defendant Avis is a Puerto Rican corporation engaged in the car rental business. Answer of Defendant Avis, par. 3.

9. Co-defendant Hertz is a Puerto Rican corporation engaged in the car rental business. Answer of Defendant Hertz, par. 4.

10. Co-defendant National is a Puerto Rican corporation engaged in the car rental business. Answer of Defendant National, par. 2.

11. The challenged practices of the three defendants do not differ significantly from one another for purposes of this lawsuit; therefore, the three shall be dealt with collectively in this opinion.

12. On May 17, 1982, Mr. López rented a car from Avis in Mayaguez and drove to San Juan. Mr. López returned the car to the Avis office at the San Juan airport. López Deposition at 50–54. Mr. López rented the car pursuant to Avis' standard rental agreement.[3]

13. Paragraph 3 of Avis' standard rental agreement states:

Renter shall pay Lessor on demand: ...

(b) if ... the vehicle is returned with less gasoline than when rented, an additional charge to compensate Lessor (Avis) for such deficiency ...

López Deposition, Exhibit 1; Affidavit of John Sotolongo, ("Avis Affidavit"), paragraph 5.[4]

14. All of defendants' cars are rented pursuant to the standard rental agreement and none of defendants' rentals include gasoline in the rental rate. Avis Affidavit, paragraphs 4, 5; Hertz Affidavit, paragraphs 3, 4; National Affidavit, paragraphs 4, 5.

15. Defendants do not require car rental customers to buy gasoline from them and defendants make no gasoline charge unless the customer returns the car to them with less gasoline than when rented. Avis Affidavit, paragraph 7; Hertz Affidavit, paragraph 7; National Affidavit, paragraph 8.

16. Defendants do not prohibit or restrict their customers' right to buy gasoline from any source. Avis Affidavit, paragraph 7; Hertz Affidavit, paragraph 7; National Affidavit, paragraph 8.

17. Customers of defendants who wish to purchase gasoline before returning the rented cars may purchase gasoline from anyone they choose. Avis Affidavit ¶ 7; Hertz Affidavit ¶ 7; National Affidavit ¶ 8.

18. When Mr. López rented a car from Avis on May 17, 1982, he was not told he had to buy gasoline from Avis, nor was he told he could not refill the tank himself from any source. López Deposition at 53–55, 80.

## III. LEGAL ANALYSIS

### A. *Tying Arrangements*

A "tying arrangement" or "tie-in" is the sale or lease of one item (the "tying product") only on condition that the buyer or lessee take a second product (the "tied

---

**3.** A copy of the standard rental agreement between Mr. López and Avis was made an exhibit to the transcript of his deposition. López Deposition at 5; *Id.* Exhibit 1.

**4.** A customer of Hertz or National also pays for gasoline only if the car rented is returned with less gas then when picked up. Affidavit of Alberto Roque, ("Hertz Affidavit"), paragraph 4;

Affidavit of Miguel A. Marrero ("National Affidavit") paragraph 5. The current provision of Avis' standard rental agreement pertaining to gasoline charges has been used by Avis since July 1977. Avis Affidavit, paragraph 4. Hertz and National have used similar provisions at all times relevant to this action. Hertz Affidavit, paragraph 3; National Affidavit, paragraph 5.

product") from the same source. III *P. Areeda & D. Turner, Antitrust Law* ¶ 733, at 257 (1978). Such arrangements can have a serious adverse impact on competition in the market for the tied product. As the Supreme Court has declared:

> By conditioning his sale of one commodity on the purchase of another, a seller coerces the abdication of buyers' independent judgment as to the "tied" product's merits and insulates it from the competitive stresses of the open market.... [T]he effect on competing sellers attempting to rival the "tied" product is drastic: to the extent the enforcer of the tying arrangement enjoys market control, other existing or potential sellers are foreclosed from offering up their goods to a free competitive judgment; they are effectively excluded from the marketplace.

*Times-Picayune Publishing Co. v. United States,* 345 U.S. 594, 605, 73 S.Ct. 872, 878, 97 L.Ed. 1277 (1953).

■ Because of their potential to thus restrain trade, tying arrangements with respect to commodities have historically been condemned under Section 3 of the Clayton Act when either (1) the seller has a monopolistic position in the market for the tying product or (2) a substantial volume of trade is restrained in the market for the tied product. *Id.* at 608–609, 73 S.Ct. at 880; III *P. Areeda & D. Turner, supra,* ¶ 733b. Moreover, when *both* of these factors are present, such a tie-in constitutes a *per se* violation of Section 1 of the Sherman Act. *Id.* at 609, 73 S.Ct. at 880; *International Salt Co. v. United States,* 332 U.S. 392, 396, 68 S.Ct. 12, 15, 92 L.Ed. 20 (1947).

■ Because this case is before us on defendants' joint motion for summary judgment, we must determine whether Caribe has made the showing required to defeat such a motion. Summary judgment on the merits is appropriately granted when the pleadings, depositions and other papers, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Caribe argues that this case is inappropriate for summary judgment, relying on *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Plaintiff characterizes the instant case as "complex" antitrust litigation in which summary judgment should be used sparingly. The Court disagrees with plaintiff's characterization of this case as "complex," since the pleadings disclose a straightforward and uncomplicated set of facts. This is certainly not a case where the defendants' "motive" and "intent" will play a dispositive role as in *Poller.* Caribe cannot avoid summary judgment simply by waving the "magic wand" of *Poller. White v. Hearst Corp.,* 669 F.2d 14, 17 (1st Cir.1982).

■ Even if plaintiff's characterization were correct, however, the Court does not believe that summary judgment is inevitably inappropriate in antitrust litigation. *See First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). On the contrary, even in an antitrust case, the party opposing the motion must come forward with "some indication that he can produce the requisite quantum of evidence to enable him to reach the jury with his claim." *White v. Hearst Corp.,* 669 F.2d 14, 17 (1st Cir.1982) (quoting *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976)).

■ The papers presented to this Court clearly show that plaintiff cannot meet this standard. The threshold requirement of any unlawful tying arrangement is that there are two distinct products in question that are in fact "tied" to one another. *Times-Picayune Publishing Co. v. United States,* 345 U.S. 594, 613–14, 73 S.Ct. 872, 883, 97 L.Ed. 1277 (1953). It is highly questionable in the instant case whether two distinct products are involved. The defendants are in the business of furnishing rental cars to customers for use in providing transportation from place to

place. The cars are furnished with a full tank of gasoline as a convenience to the customer. There would be very little market for that gasoline without the rental car, just as there would be very little market for the car without the gasoline. Accordingly, the Court is not convinced that there are involved here the two distinct products necessarily prerequisite to any tying arrangement. *See Washington Gas Light Co. v. Virginia Electric Power Co.*, 438 F.2d 248 (4th Cir.1971) (holding that underground electrical wiring and the electricity delivered through it were not separate products).

■ Even if rental cars and the gasoline they consume are deemed separate products, however, plaintiff's claim must fail. Coercion is an essential element of any tying arrangement, *i.e.*, forcing the purchaser or lessor to take the unwanted tied product along with the tying product. "A buyer must be told he will not get the tying product unless he purchases the tied product." *Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Systems, Inc.*, 491 F.Supp. 1199, 1207 (D.Hawaii 1980). Plaintiff has not only failed to present facts showing that the sale of gasoline is forced upon defendants' customers along with rental of a car, but Caribe's own vice-president recognized that the practice of defendant Avis is directly contrary to such an assertion.[5]

■ In addition, each of the defendants has established by affidavit, supported by documentary evidence, that their customers are not required to purchase gasoline from them. As a matter of practice, each defendant rents a car with a full tank of gasoline at the time the customer picks up the car.[6] The rental rate does not, however, include any charge for gasoline. *See, e.g.*, Hertz Affidavit ¶ 4. A customer who returns a car with less than a full tank is charged for the gasoline necessary to make up the deficiency. Customers have the choice, however, of returning the car with a full tank, in which case the car rental company imposes no charge for gasoline. As Caribe's representative acknowledged, there are no restrictions on where customers may purchase the necessary gasoline. López Deposition at 93. Clearly, no customer is "forced" to purchase gasoline from the rental company.

In contrast to the defendants' detailed factual affidavits and exhibits, Caribe has presented only conclusory affidavits that fail to meet the requirements of Rule 56(e). That rule requires that affidavits "shall set forth such *facts* as would be admissible in evidence." Fed.R.Civ.P. 56(e) (emphasis added). With respect to the defendants' alleged "forced" sale of gasoline, the affidavit submitted by plaintiff's vice-president contains no facts, but relies solely on a conclusory assertion based on the affiant's "personal experience."[7] As noted above, however, during deposition testimony this same affiant expressly admitted his personal knowledge of the fact that the defendants do not force customers to purchase gasoline. López Deposition at 93. Absent such a relationship between rental cars and

5. Mr. Felipe López, Vice-President of Caribe, testified to his personal experience in renting a car from defendant Avis. He conceded that he was at no time told that he must buy gasoline from Avis; rather, he expressly acknowledged that the defendants permit their customers to buy gasoline from any source, and do not force them to purchase it from the car rental company. López Deposition at 93.

6. This practice is based on market research indicating that car rental customers prefer to rent cars with a full tank of gasoline. *See, e.g.*, Avis Affidavit ¶ 6; National Affidavit ¶ 6; Hertz Affidavit ¶ 5. There may also be other business reasons for such a practice. Uniformity in the amount of gasoline in cars available for rental prevents unnecessary administrative expense for the rental company. For practical reasons, a full tank is the easiest to administer. The Court finds these business considerations far outweigh any anti-trust concerns the plaintiff has asserted.

7. Affidavit of Felipe M. López, ¶ 5. The only other affidavit to address this issue simply incorporates the statements of Mr. López, and is entitled to no independent evidentiary weight. *See* Affidavit of C. López-Pena, ¶ 2.

gasoline, the tie-in Caribe has alleged cannot exist.[8]

The record in this case clearly establishes that the defendants do not force the sale of any of their products on their customers. Thus, the plaintiff cannot establish an illegal tying arrangement, and the defendants are entitled to judgment as a matter of law.

### B. *Standing.*

■ Section 4 of the Clayton Act, 15 U.S.C. § 15, states that "[a]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor ...." Despite the breadth of this language, the Supreme Court has held that "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 263 n. 14, 92 S.Ct. 885, 891 n. 14, 31 L.Ed.2d 184 (1972); *see also Gilbuilt Homes, Inc. v. Continental Homes of New England, Inc.,* 667 F.2d 209 (1st Cir.1981). The First Circuit uses a "target area" test to determine whether a plaintiff has standing under the antitrust laws. *Engine Specialties, Inc. v. Bombardier, Ltd.,* 605 F.2d 1 (1st Cir.1979), *cert. denied,* 446 U.S. 983, 100 S.Ct. 2964, 64 L.Ed.2d 839 (1980). Under that test, the plaintiff must be a "target" of the proscribed activities in order to sue; merely having a "relationship" with the target is insufficient. 454 F.2d at 18; *see generally* II *P. Areeda & D. Turner, supra,* ¶ 334d. Where, as here, retailers of gasoline would be the target of the allegedly illegal conduct, a wholesaler such as Caribe has no standing to sue. *Billy Baxter, Inc. v. Coca Cola Co.,* 431 F.2d 183, 189 (2d Cir.1970); *Robert's Waikiki U-Drive,* 491 F.Supp. at 1206 n. 1; *see Associated General Contractors of California, Inc. v. California State Council of Car-*

*penters,* —— U.S. ——, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). In arguing to the contrary, plaintiff relies primarily on a Ninth Circuit case, *Karseal Corp. v. Richfield Oil Corp.,* 221 F.2d 358 (9th Cir.1955). The Court cannot find that the position adopted in that case is followed in this Circuit.

■ The Court holds that Caribe, as a wholesaler, has no standing to sue for injuries incurred by the retailers to whom it sells its products.

### IV. CONCLUSIONS OF LAW

Based on the foregoing findings of fact and legal analysis, the Court hereby makes the following conclusions of law:

1. Caribe has no standing under the federal antitrust laws to bring this suit.

2. Even assuming *arguendo* that Caribe could establish standing, the record clearly and conclusively shows that the defendants do not force the sale of gasoline on automobile rental customers, and therefore, defendants' practices do not constitute an unlawful tying arrangement as a matter of law.

Accordingly, the Clerk shall enter JUDGMENT in favor of the defendants, DISMISSING the complaint as to each of them.

IT IS SO ORDERED.

---

**8.** The Court has reviewed Caribe's request for additional discovery to obtain facts in support of its claim. In light of the plaintiff's concessions during deposition testimony and the facts submitted by the defendants, the Court finds that no issue of material fact concerning the alleged tie-in can be raised thereby. Plaintiff's request, accordingly, is denied. *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *O. Hodgkins Sales Corp. v. Chrysler Corp.,* 327 F.Supp. 1020 (D.Mass.1971).